## DRAUGHN v. STATE.

No. A-2499.    Opinion Filed July 15, 1916.

(158 Pac. 890.)

1.    MARRIAGE—Requisites—Solemnization.    Marriage in its legal sense is a civil contract, and where competent parties agree to become man and wife, it is not indispensable that a license issue and that a clergyman be present to authorize and confirm the ·contract, in order to give validity to the marriage.

2.    MARRIAGE — Common-Law Marriage—Validity.    Statutes regulating the mode of entering into the marriage contract do not confer the right that has existed ever since there were two human hearts, and such statutes are not within the principle that, where a statute creates a right and provides a remedy for its ·enforcement, that remedy is exclusive; hence common-law marriages in this state, although in derogation of the statutory directions as to formalities, are valid, since such marriages are not expressly forbidden by our statutes.

3.    BIGAMY—Elements of Offense—Validity of Former Marriage. A common-law marriage in this state is valid, and if a party to such a marriage marries again, before the same has been dissolved by death or legal proceedings, he is guilty of bigamy.

4.    RAPE—Elements of Offense—Trick or Artifice. Subdivision 8 of section 2414, Revised Laws 1910, which provides that an act of sexual intercourse is rape when accomplished with a female not the wife of the perpetrator, "where she submits under the belief that the person committing the act is her husband, and this belief is induced by artifice, pretense or concealment practiced by the accused, or by the accused in collusion with her husband, with intent to induce such belief," is intended to protect a married woman against any one who might by trick or artifice deceive her, and have intercourse with her under the belief, on her part, that such person is her husband. The artifice against which this statute is directed is such as deceives the woman as to the identity of the man with whom she is having intercourse, thus causing her to submit to intercourse with him, under the belief that he is her husband.

*Error from District Court, Marshall County;
Jesse M. Hatchett, Judge.*

I. D. Draughn was convicted of rape, and brings error. Reversed and remanded, with directions to dismiss case.

*Robert Wimbish, W. C. Duncan,* and *Orel Busby,* all of Ada, for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J.    Plaintiff in error in this case, who will be referred to as defendant, was convicted in the district court of 'Marshall county of rape, and sentenced to seven years in the penitentiary. He was prosecuted and convicted under subdivision 8, Section 2414, Revised Laws, 1910, which provides that rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator:

"Where she submits under the belief that the person committing the act is her husband, and this belief is induced by artifice, pretense or concealment practiced by the accused, or by the accused in collusion with her husband with intent to induce such belief. And in all cases of collusion between the accused and the husband of the female, to accomplish such act, both the husband and the accused shall be deemed guilty of rape."

The material facts in this case are that the defendant for some time kept company with the prosecutrix, Nettie Crabtree, won her confidence and affection, and promised to marry her. Due to his employment, he and the prosecutrix were separated for some time, and he finally wrote her to come to him and they would get married, and sent her the money on which to make the trip. She met him at the designated time and place, and he produced a man purporting to be a minister, with a paper which purported to be a marriage license. They stood up before this person and took the marriage vows. They then went to Sulphur, Okla., and lived as husband and wife. The defendant introduced her to his friends and acquaintances as his wife, provided for her, paid her doctor bills, and in every way they for more than three years maintained the relation of husband and wife, visited both his and her people, lived in other communities than Sulphur, and everywhere he supported her, cohabited with her, and treated her in every respect as his wife. Three children were born to them, and he seemed to be proud of the offspring, and as a doting father presented them to his friends and acquaintances as the children of him and his wife. But finally he abandoned this woman, and the next she heard of him he was married to another.

The defendant contends that he could not legally be prosecuted for rape under these conditions by reason of the sexual relations he had with the prosecutrix. The state proceeded on the theory that she submitted to these relations under the belief that he was her husband, and that in fact he was not, but she was induced to believe he was by reason of a sham marriage, and therefore her consent thus obtained by such artifice, fraud, and pretense brought the offense within the contemplation of the statute above quoted.

(1-3) But in this, for two reasons, we think the state is wrong. First, because under the law of marriage as announced by the Supreme Court of Oklahoma, and almost every other court in the Union that has spoken on that subject, they were under the facts in this case husband and wife. He courted her, she loved him, he asked her to marry him, she consented, and the contract

was consummated and sealed by his sending her the money, and her going to him, where they mutually took upon themselves the marriage vows. They lived and cohabited as husband and wife, so held themselves out to the world, and brought children into the world as such. It is true, perhaps, that this man who impersonated the minister was not a minister, that the paper he held in his hand was not a marriage license, and that the statutory directions with reference to solemnizing the marriage rite were not in any respect followed; yet it has been repeatedly held by the most respectable courts of our land that the right of marriage is not conferred by statute, but has existed ever since there were two human hearts, and will continue to exist as long as there is a man and woman upon the earth, and that, because the statute directs the rite to be solemnized in a particular way, it does not follow that it is void simply because it was solemnized in some other way.

In *Reaves v. Reaves,* 15 Okla. 240, 82 Pac. 492, 2 L. R. A. (N. S.) 353, the common-law marriage is upheld by a strong and well-considered opinion, and the doctrine there announced has consistently been followed every time that court has had occasion to speak upon the subject, and that question seems well settled in this jurisdiction; the last announcement on this subject being in re *Love's Estate,* 42 Okla. 478, 142 Pac. 305, L. R. A. 1915E, 109. In *Reaves v. Reaves, supra,* the court says:

"As before stated in this opinion, the general rule is that statutes which direct that a license must be issued and procured, that only certain persons shall perform the ceremony, that a certain number of witnesses shall be present, and that a certificate of the marriage shall be signed, returned, and recorded, and that persons violating the conditions shall be guilty of a criminal offense, are directory merely, being addressed to persons in authority to secure publicity and a record of marriages, and will in no wise affect the validity of the marriage contract, unless they contain an express provision to that effect. They simply provide the evidence of the marriage. In *Meister v. Moore,* 96 U. S. 76, 24 L. Ed. 826, the Supreme Court of the United States makes use of the following language: 'The learned judge of the Circuit Court instructed the jury that, if neither a minister nor a magis-

trate was present at the alleged marriage of William A. Mowry and the daughter of the Indian Pero, the marriage was invalid under the Michigan statutes, and this instruction is now alleged to have been erroneous. It certainly withdrew from the consideration of the jury all evidence, if any there was, of informal marriage by contract, per verba de praesenti. That such a contract constitutes a marriage at common law there can be no doubt, in view of the adjudication made in this country from its earliest settlement to the present day. Marriage is elsewhere regarded as a civil contract. Statutes in many of the states, it is true, regulate the mode of entering into the contract; but they do not confer the right. Hence they are not within the principle that, where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive. No doubt, a statute may take away a common-law right; but there is always a presumption that the Legislature has no such intention, unless it be plainly expressed. A statute may declare that no marriages shall be valid, unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or clergyman, or that it be preceded by a license, or publication of banns, or be attested by witnesses. Such formal provisions may be construed as merely directory, instead of being treated as destructive of a common-law right to form the marriage relation by words of present assent. And such, we think, has been the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common law to be good notwithstanding the statutes, unless they contain express words of nullity. This is the conclusion reached by Mr. Bishop after an examination of the authorities."

And the court in this opinion also quotes approvingly from *Mathewson v. Phoenix Iron Fountry* (C. C.) 20 Fed. 281, as follows:

"At common law, as held in this country, and until recently, it would seem, as generally understood in England, persons of suitable age might, by words of present consent, contract a valid marriage without the presence and intervention of a minister, and without any particular form of solemnization. A statute may, of course, take away this common-law right; but this is not to be presumed. The right is not conferred by statute, but exists independent of it, and therefore it is held the rule

does not apply that, when a statute directs a thing to be done in a particular way, it is void if done in any other way. The construction usually adopted is that, when the statute regulating marriage is directory merely, when it does not expressly forbid other marriage contracts, a marriage per verba praesenti, or at common law is good."

To the same effect are the following authorities: 2 Greenl Ev. par. 460; *Kent,* Com. 51; *Reeve,* Dom. Rel. 247; *Bynon v. State,* 117 Ala. 80, 23 South. 640, 67 Am. St. Rep. 163; *Jones v. Jones,* 28 Ark. 19; *Hargroves v. Thompson,* 31 Miss. 211; *Hynes v. McDermott,* 91 N. Y. 451, 43 Am. Rep. 677; *Carmichael v. State,* 12 Ohio St. 553.

And in *In re Love's Estate, supra,* Commissioner Brewer says:

"So we repeat that, so far as the statutes relating to the precise question involved here are concerned, all of the reasoning and the authorities quoted and relied upon in *Reaves v. Reaves, supra,* when studied closely seem to be applicable at the present time; but it may be said that, to give our statute a reasonable construction, they prohibit persons from entering into the marriage relation except in the manner pointed out, and in a sense they do; but it is significant that they nowhere declare that marriages entered into otherwise than the statutory way are void."

And the opinion closes with the following language, which is very pertinent to the facts in the case at bar:

"At the trial of this suit a little daughter, the result of this union sat innocently by, unconscious that her very name and future status were being determined there. We infer from the record that the property involved is insignificant, and was probably little in mind, while this woman fought for the relation of wife and for a name for her little girl. She is entitled to both. We do not propose to sit here, considering the most sacred relation of life, and construe away the status of this woman, who appears to have acted in good faith; neither will we turn the innocent result of this common-law union out into the world a nameless thing. She was begotten by a man who had voluntarily assumed the relation of husband, and she shall have the right to be called his child and bear his name."

The facts in neither of the cases quoted from are as strong as the facts in the case at bar; and the defendant in this action is the husband of this woman, and until separated from her by death or legal proceedings had no right to marry another, and in doing so he committed the crime of bigamy, and should be taught that marriage is a sacred relation, and not a mere convenience for the gratification of the beastly passions.

(4) 2. Our second reason for thinking that the state is wrong in its theory is that the statute relied upon in this prosecution is intended to protect married women against any who might by trick or artifice deceive her and have intercourse with her under the belief, on her part, that such person was her husband. That this was the intention of the Legislature further appears from the fact that it is provided that, if her husband enter into a collusion with the accused to accomplish this purpose, he also shall be deemed guilty of rape. The artifice against which this statute is directed is such as deceives the woman as to the identity of the man with whom she is having intercourse, thus causing her to submit to intercourse with him under the belief that he is her husband.

The judgment is reversed, and the cause remanded, with directions to dismiss the case, and recommendation that the defendant be prosecuted for bigamy.

DOYLE, P. J., and ARMSTRONG, J., concur.