# FRED C. HOLZ v. STATE.

No. A-9174. June 18, 1937.
(69 Pac. [2d] 405.)

A. J. Stevens and C. E. Wilhite, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and L. Z. Lasley, Co. Atty., for the State.

BAREFOOT, J. The facts in this case reveal that the defendant and Ruby Guthrie were married at Winfield, Kan., on the 6th day of January, 1923. They were living in Woods county, Okla., at the time of the marriage, and

since that time have lived in Missouri, Chicago, and in Woods county, Okla. They had two children, Fred Carl Holz, Jr., age 12, and Herman Wade, age 7. The defendant, while said marriage was in full force and effect, deserted his wife in Tulsa, during the summer of 1935, and on October 26, 1935, married one Juanita Kassack, at Medicine Lodge, Kan., and afterwards came to Woods county, Okla., where they were living with their infant child at the time the defendant was tried, convicted, and sentenced to serve a term of five years in the penitentiary and to pay a fine of $250.

The first assignment of error by defendant is that if guilty of any crime, he is guilty of bigamy and not adultery. He insists that there should be a merger of the lesser crime into the greater, and that he should have been charged with the crime of bigamy. He argues that, because there was not introduced in evidence the marriage certificate between him and Ruby Guthrie, under the law the presumption is that there was no valid marriage between them and that the presumption further is that his subsequent marriage with Juanita Kassack was lawful. The answer to this argument is the testimony in this case. Defendant's wife testified that she and defendant were married at Winfield, Kan., on January 6, 1923; that the ceremony was performed by a justice of the peace; that the officer had a paper in his hand at the time of the service, and that the defendant handed him something after the ceremony was performed; that they had lived together as husband and wife until defendant deserted her in Tulsa in July, 1935; that they had two children; that they had lived in Missouri, Chicago, and Oklahoma during their married life. An insurance policy was introduced in evidence showing that Ruby Holz, the wife of Fred Holz, was the beneficiary. Letters from the defend-

ant to her were introduced in evidence, some of them as late as 1934, in which he referred to her as his "wife" and "their children." Also certificates showing the christening of his children while they lived in Chicago. These rites were attended by him and his relatives; his grandfather and grandmother also being present. She testified that she had never seen the marriage certificate, but the defendant told her he had it, but could not find it. Other witnesses testified to his living with her and holding her out as his wife subsequent to their marriage. Under these facts, we think it was unnecessary to produce the marriage certificate. Under the law and facts in this case, even though the defendant and Ruby Holz were not legally married, they would be common-law husband and wife, and the defendant would not be permitted to remarry unless that marriage had been dissolved in the manner prescribed by law. Draughn v. State, 12 Okla. Cr. 479, 158 Pac. 890, L.R.A. 1916F, 793; Nichols v. State, 50 Okla. Cr. 409, 298 Pac. 886. Being the lawful husband of Ruby Guthrie, he could not lawfully marry Juanita Kassack, and his living with her was living in adultery.

The evidence showed they were living together in Woods county openly and notoriously and also had a child. Under the law, defendant was guilty of both bigamy and adultery. These are two separate crimes, and the fact that the county attorney chose to prosecute the defendant for the lesser crime was not error.

In the case of Swancoat v. State, 4 Tex. App. 105, the court, in a case where the facts are very similar, said:

"We hold, then, that a man and woman who shall voluntarily live together, or cohabit together, they not being lawfully married to each other, but one of them * * * married to some other person, would be guilty of the crime of adultery within the meaning of the statute."

Also, in the case of Hildreth v. State, 19 Tex. App. 195, the court, in almost an identical case, says:

"It is contended by appellants' counsel that, as the evidence shows that defendants married each other, and lived together as husband and wife, if guilty of any offense, they are guilty of bigamy, and cannot be convicted under an indictment charging adultery. In Swancoat v. State, 4 Tex. App. 105, this court held to the contrary, and sustained a conviction for adultery in a case where the evidence established a marriage of the defendants.

"This ruling in the Swancoat Case we adhere to as correct in principle and supported by ample authority. (Bish. on Stat. Cr., § 662.)"

Also, in the case of Owens v. State, 94 Ala. 97, 10 So. 669, the court said:

"The defendants, Joe Owens and Prudence Beatty, were convicted on the charge of living together in a state of adultery or fornication. The cohabitation was not denied, but the defendants claimed that they had been duly married."

The record showed they had been, just as the record reveals in this case. The court, in the opinion, says:

"The offense of bigamy is complete when the second marriage is complete, without proof of subsequent cohabitation. Beggs v. State, 55 Ala. 108. The offense of adultery is not necessarily involved in bigamy, and there may be a prosecution for living together in a state of adultery, although the parties may also be guilty of bigamy. There was no error in the charge of the court on this subject."

Chief Justice Cooley, of the Michigan Supreme Court, in the case of People v. Brown, 34 Mich. 339, 22 Am. Rep. 531, says:

"Nor can we understand of what importance it can be that there are two elements of illegality in the case

instead of one, or why the party should be relieved from the consequences of violating one statute because the act of doing so was a violation of another also. The authorities sanction no such doctrine."

In Brill's Cyclopedia of Criminal Law, par. 1046, the rule is stated as follows:

"Bigamy and adultery growing out of a void marriage between a man and a woman, one of whom is already legally married to another, are distinct offenses, and the fact that the parties are guilty of bigamy will not prevent their prosecution for adultery."

See, also, 2 C. J. pp. 12 and 16, §§ 2 and 14.

Other errors argued by defendant are based upon the same proposition that he could not be prosecuted for adultery, but should have been prosecuted for bigamy. The authorities cited above show the error in this contention. We have examined the case of Draughn v. State, 12 Okla. Cr. 479, 158 Pac. 890, L. R. A. 1916F, 793, relied upon by defendant, and we find that it in no way conflicts with the rule announced above. This case does not hold that the defendant could not have been prosecuted for adultery. In his brief, counsel for defendant say:

"Adultery and bigamy are two distinct offenses, and a trial and conviction in the one is not a bar to a trial and conviction in the other."

We think this is the law, and we find no error in the record.

We have examined the instructions and think they fairly state the law in accordance with the facts in this case.

It is finally contended that the punishment inflicted in this case is too severe. The defendant was given a sentence of five years in the penitentiary and a fine of

$250. The defendant deserted his wife and children after living with them for a period of 12 years; he made no pretense to secure a divorce, but premeditatedly married a young girl and caused her to become the mother of a child. He seemed to have no regard for the law of the land, or no regard for the shame and disgrace he inflicted upon others. He brought this young girl to live close to the neighborhood where he had lived with his wife and children. The jury in his own county weighed these matters and assessed his punishment.

We do not think, under the circumstances, that the punishment was excessive, and the judgment of the district court of Woods county is therefore affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.