439 P.2d 805

The **STATE** of Arizona, Appellee,

v.

Richard McFALL, Appellant.

No. 9062–PR.

Supreme Court of Arizona,
In Banc.

April 17, 1968.

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., Phoenix, William J. Schafer, III, Pima County Attorney, Tucson, for appellee.

Clampitt, Videen & Berlat, Tucson, for appellant.

STRUCKMEYER, Justice.

Richard McFall was indicted, tried and convicted on five counts of obtaining narcotics by forgery of prescriptions, A.R.S. § 36–1017, as amended by Laws of 1963, Ch. 59. The Court of Appeals affirmed the

convictions. Opinion 5 Ariz.App. 539, 428 P.2d 1013 vacated.

Defendant McFall urges that his statements made to the arresting officers and a written statement in his handwriting, a duplicate of the forged prescriptions, were involuntary. He testified that he was a narcotic user and when arrested had in his possession some narcotic "tablets and pills". Then:

"Q Did you feel that you needed to use some of the tablets?

"A Yes.

"Q When you were arrested did you inform the officers of this fact?

"A Yes. I requested some of the tablets.

"Q Did you believe they were going to let you have some of them?

"A At the time that I asked for the tablets, we were—the second time—the first time I asked for them was when we were in the car, the second time I asked for my tablets was at the office in the police intelligence unit, and they told me that that matter would be discussed after we had taken care of the business at hand, going through the search and their asking questions of me.

"Q Did this conversation take place before you filled out the prescription form?

"A Yes. * * *"

Police officers Jack Hitchcock and Robert J. Grant arrested the defendant and interrogated him at the police station. At the trial both responded in the negative to the leading question of whether there were any threats or promises of reward made. However, both testified on cross-examination that while they did not recall the defendant asking for drugs, it was possible that he did. Officer Grant, on cross-examination:

"Q Did he ask permission to use any of the drugs in your presence down at the police station?

"A Not that I recall.

"Q Is it possible that he could have?

"A It's possible."

Officer Hitchcock, on cross-examination:

"Q Now, at the police station did Mr. McFall request to use some pills or tablets?

"A I don't recall him requesting that, no, sir.

"Q Could it have been possible?

"A Possible, yes, sir."

An answer by a witness that he does not remember whether an event occurred is not a denial that the event did not occur. Such an answer does not contradict the defendant's positive assertion that when he asked for the tablets the officers replied, "that matter would be discussed after we had taken care of the business at hand * * *." The defendant's testimony is unimpeached, either by the officers' testimony or other testimony or circumstances in the case. It should have been accepted at face value.

A confession to be free and voluntary within the meaning of the Fifth Amendment to the Constitution of the United States must not have been obtained by " 'any direct or implied promises, *however slight,* * * *.' " Malloy v. Hogan, 378 U.S. 1 at p. 7, 84 S.Ct. 1489 at p. 1493, 12 L.Ed.2d 653. There was, in the instant case, a clear insinuation that defendant might be given drugs implied from the fact that he was led to believe his request would be considered later. It became the immediate duty of the officers to tell him, plainly, and unequivocally, that they would not give him any of the drugs taken from his possession at the time of arrest. Because they did not give him an unequivocal refusal, a forthright rejection, he was left with some hope of obtaining drugs if he cooperated. That defendant, as he testified, "might be reading something, speaking truthfully, something into there that wasn't there," is not relevant to this determination. The hope of reward was there, induced by the equivocal answer.

█ Moreover, the fact that defendant was not actually suffering acute withdrawal symptoms is of little significance. An addict lives with the certain knowledge that the time must inevitably come when another "shot" or more drugs must be taken and, in dreadful anticipation of that time, must necessarily prepare for it. We are constrained to say that a trial judge can only meaningfully implement the decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, at the state level if he realistically and objectively appraises the possible compulsive circumstances surrounding the procurement of a confession. For the foregoing reason, it is our view that this cause must be reversed for a new trial.

There are other claims of error which we reject. Defendant asserts that his arrest was made without probable cause. A.R.S. § 13–1403, as amended, provides:

"A peace officer may, without a warrant, arrest a person:

\*     \*     \*     \*     \*     \*

"3. When a felony has in fact been committed, and he has probable cause to believe that the person to be arrested has committed it."

█ Prior to the time of the defendant's apprehension on December 14, 1965, the arresting officer determined that narcotics had been obtained by forged prescriptions. Defendant had been identified by two druggists as the person who presented prescriptions at their stores, and the license number of defendant's car had been supplied by one of the druggists. On the strength of this information the officers had probable cause to believe that defendant had forged the prescriptions. The arrest was legal. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; State v. Musgrove, 2 Ariz.App. 505, 410 P.2d 127. The search and seizure were clearly incidental to a lawful arrest, Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726; State v. Musgrove, supra; State v. Randall, 94 Ariz. 417, 385 P.2d 709, and defendant's motion to suppress was properly denied.

█ Defendant complains of the modification by the trial judge of two of his requested instructions by the addition of the words "or deceive." For example, in defendant's requested instruction No. 8:

"Thus in the crime of forgery, a necessary element is the existence in the mind of the perpetrator of the specific intent to defraud *or deceive,* and unless such intent so exists that crime is not committed." (Emphasis supplied.)

As an abstract proposition, defendant is correct. The crime of forgery is defined in A.R.S. § 13–421.

"A. A person is guilty of forgery who, with intent to defraud:

"1. Signs the name of another person, \* \* \*."

The mens rea must include the intent to defraud. An intent to deceive is not alone sufficient to constitute the crime.

However, we do not think that under A.R.S. § 36–1017, the offense here charged, the forgery referred to is the same statutory forgery defined in A.R.S. § 13–421. A.R.S. § 36–1017, as amended, provides:

"A. No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug by:

\*     \*     \*     \*     \*     \*

"2. The forgery or alteration of a prescription or of any written order."

█ As stated, forgery in the criminal law and as a prohibited act requires an unlawful intent to defraud and the crime does not exist unless the act of forging is accompanied by the criminal intent. State v. Maxwell, 95 Ariz. 396, 391 P. 2d 560. While Webster's Third International Dictionary defines forgery as the "crime of falsely and with fraudulent intent making or altering a writing" etc., it also defines forgery as "something produced by forging, fabricating or counterfeiting."

It is in this latter sense, we think, that the statute § 36–1017 uses the word "forgery."

Examination of the statute establishes that the act prohibited is obtaining narcotics by a forged or altered prescription. If an intent to defraud is to be implied, the statute would take on an unreasonable and absurd meaning; that is, the crime prohibited is either obtaining narcotics with the intent to defraud by forging a prescription or obtaining narcotics by forging a prescription with intent to defraud. Courts will not place an absurd and unreasonable construction on statutes. City of Phoenix v. Superior Court in and for Maricopa County, 101 Ariz. 265, 419 P.2d 49; State Board of Dispensing Opticians v. Schwab, 93 Ariz. 328, 380 P.2d 784; Local 266, Intern. Broth. of Elec. Workers, A. F. of L. v. Salt River Project Agri. Imp. and Power Dist., 78 Ariz. 30, 275 P.2d 393. By requiring an intent to defraud to accompany the act of fabricating or counterfeiting, the statute is deprived of all virility since manifestly no person can be pointed to who is defrauded or who the legislature believed could be defrauded.

We conclude that the court erred in instructing the jury as to the elements of the crime of forgery because thereby it implied that the word "forgery" as used in § 36–1017 required a "specific intent to defraud." Since the court erred in this respect, it likewise erred in adding the words "or deceive" for neither is essential to complete the offense prohibited by the statute. However, the error is one which plainly imposed a greater burden of proof upon the State than is required, and, accordingly, we hold that it was not prejudicial and therefore not reversible error.

Finally, defendant complains that the introduction into evidence of State's exhibit No. 9, a narcotics kit, found in the possession of defendant was error as having no materiality to the issues of the crimes charged. Possession of the narcotic kit tends to connect the defendant with the offenses charged because of the high degree of probability that a narcotic user would be likely to forge narcotic prescriptions to obtain a supply.

Inasmuch as this cause must be reversed for the reason previously set forth, we find it unnecessary to discuss the claimed failure to establish Pima County as the venue of the offense.

Judgment reversed.

McFARLAND, C. J., and BERNSTEIN and LOCKWOOD, JJ., concur.

UDALL, Vice Chief Justice (dissenting):
I am not able to agree with the opinion of the majority in the above-entitled matter, in so far as it relates to the question of the admissibility of the defendant's confession.

The majority expresses the view that defendant's request to the officers for some of the tablets, and their reply that "that matter would be discussed after we had taken care of the business at hand, going through the search and their asking questions of me," was an intimation by the officers that he [defendant] would receive some of the pills after the search and interrogation had been completed. The majority also argues that the admission by the two officers that defendant may have made a request to use some of the pills was a tacit suggestion by them that the defendant was to receive the pills. This conclusion is not justified by the evidence.

The sole question in this case is not whether defendant asked for the pills, but whether he was led to believe that he would receive the pills provided he cooperated with the police. The testimony in this regard shows that defendant did not rely on the so-called intimation of reward. His testimony is as follows:

Q "You believed, when you filled out the form and your conversation at the detective headquarters that you were going to receive the benefit of getting to use the drugs?

A "I believe that I could and certainly I will say that, and also *I had say that no*

*one said I would to me.* There was an intimation that I would.

Q "By their actions?

A "Well, for one thing, the reference 'We will talk about that after we take care of this business at hand.'" [emphasis supplied]

On cross-examination this question was clarified.

Q "I see. And you were saying then at the time you made out the prescription on one of the blanks that they found in your car, that at that time you made a prescription out so that you would get a shot.

A *"In hopes of a shot,* Mr. Waag.

Q "But you hadn't been told that you would get one if you did or you wouldn't get one if you didn't?

A *"No, sir.*

Q "Now, this hope that you had, do you feel that the officer deliberately induced that hope or was it your own desire for a shot that created that hope in your own mind?

A *"I would say moreso my own desire.* I might be reading something, speaking truthfully, something into there that wasn't there." [Emphasis supplied]

The import of defendant's own testimony is that any intimation of reward given him was conceived by his own desire for the pills. That this is true is shown by his candid admission when he said:

"I might be reading something, speaking truthfully, something into there that wasn't there."

The majority states that defendant's testimony should have been accepted at face value. I agree; and the face value of his testimony was that he made out the prescription "in hopes of a shot." He hadn't been told he would get a shot if he did cooperate, "No Sir." The hope that he had was induced not by the officers but by "I would say moreso my own desire."

The opinion of the majority, while admitting that the defendant was not actually suffering withdrawal symptoms at the time

of the questioning, proceeds to discuss the case as though it was an established fact that the defendant was a dope addict in one of the advanced stages of addiction. Furthermore, the majority places no reliance on, and in fact, they ignore the finding of voluntariness on the trial court level. See Blackburn v. State of Alabama, 361 U.S. 199, 80 S.Ct. 274, 281, 4 L.Ed.2d 242, 249 (1960). At the very beginning of the trial, when an objection was made to the admission of defendant's confession on the grounds it was not voluntarily given, the court at that time conducted a special hearing, outside the presence of the jury, to determine the question of the voluntariness of the alleged confession. At the conclusion of the hearing, the court, who had a full opportunity to observe the defendant and determine the degree of his addiction, and whose duty it was to judge the credibility of the witness and to determine the weight to be given to his testimony, made the following order:

"The Court at this time will make the ruling as to the voluntariness of the so-called confession or statements.

"There being no showing that there was any request for counsel and denial of counsel, and based upon the circumstances, the Court rules that the statements were voluntary and will be admitted. This same ruling will apply to the execution of the written prescription."

At conclusion of the testimony the court submitted the case to the jury with proper instructions relative to the question of voluntariness of the admissions made by the defendant, and the jury found against the defendant on the issue of the voluntariness of the confession.

In reference to the other assignments of error, I am in agreement with the way these issues are disposed of by the majority opinion and I am wholly in accord with the solution suggested as to those issues.

For the foregoing reasons I would affirm the judgment of the trial court and would approve the findings and decision of the court of appeals.