454 P.2d 172

**The STATE of Arizona, Appellee,**

v.

**Raymond Pinez FLORES, Jr., Appellant.**

**No. 2 CA–CR 149.**

Court of Appeals of Arizona.

May 15, 1969.

Rehearing Denied June 20, 1969.

Review Denied July 8, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

DeConcini & McDonald, by J. Wm. Brammer, Jr., Tucson, for appellant.

KRUCKER, Judge.

Appellant, Raymond Pinez Flores, was informed against for the crime of burglary, second degree, and convicted in a jury trial held in October, 1968. He was sentenced to not less than two nor more than five years. A motion for a new trial was argued and denied. Defendant appeals from the conviction and denial of a motion for a new trial.

Briefly, the facts are that a home was broken into on or about April 14, 1968, and a television set removed therefrom. On the date in question, a neighbor, Mr. Warner, observed four persons, three male and

one female, stop at the house. He observed that they were riding in a white Mustang automobile, and he also noted the license number of the automobile. The subjects drove behind the house, out of Mr. Warner's vision, and shortly thereafter he heard the sound of breaking glass. After the four persons drove away, Mr. Warner went to the victim's house and observed the broken glass. Returning home, Mr. Warner had his wife call the sheriff's office. Upon the arrival of the deputy sheriff, Mr. Warner went with him to the premises and observed that the sliding glass door was broken and the television set was missing.

The owner of the home, Mr. Lusk, testified that he had left home on a weekend vacation, that the house was securely locked, that he had given no one permission to enter the house and remove the television set therefrom, and that he observed the broken glass door and the television set missing upon his return.

Prior to trial, on October 10, 1968, pursuant to defendant's motion to suppress evidence, a hearing was held before the trial judge to determine the voluntariness of defendant's confession. The trial court denied the motion to suppress the evidence, finding that the confession was voluntarily made after defendant had been adequately advised of his constitutional rights.

Four points are raised in this appeal.

"Did the trial court err in failing to direct a verdict for the appellant at the close of the state's case because the corpus delicti of the crime was not established aliunde the appellant's confession?

Did the trial court err in refusing to instruct the jury, pursuant to appellant's request, in the substance of Revised California Uniform Criminal Jury Instruction #26?

Did the trial court err and abuse its discretion in allowing the state to reopen its case after it had rested, over appellant's objection?

Did the trial court err in ruling that the statement taken from the defendant was voluntary, and thereby allowing the jury to hear and consider the statement?"

 The first inquiry is whether there was sufficient corpus delicti of the crime of burglary proven to allow the admission of the confession. State v. Navarro, 90 Ariz. 185, 367 P.2d 227, 91 A.L.R.2d 586 (1961). The evidence must be independent of the confession, State v. Hernandez, 83 Ariz. 279, 320 P.2d 467 (1958), although it may be circumstantial or inferential. People v. Wetzel, 198 Cal.App.2d 541, 17 Cal.Rptr. 879 (1961).

 5 A.R.S. § 13–302 makes it a crime to enter a dwelling house with intent to commit grand theft. The corpus delicti of a crime is established by showing (1) proof of a result, and (2) that some one is criminally responsible therefor. *Hernandez*, supra. In this case it was shown that someone broke into a home and took a television console without the owner's permission. We believe that this corpus delicti of burglary was independently proven by testimony of the neighbor and police officer and owner of the home, so as to allow admission of the defendant's confession.

Defendant's second allegation is that a requested instruction was not given as required. The requested instruction sets forth the rules on circumstantial evidence.

"Where the case of the People rests substantially or entirely on circumstantial evidence, you are not permitted to find the defendant guilty of the [any] crime charged against him unless the proved circumstances are not only consistent with the theory that the defendand is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.

Also, if the evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to

the defendant's innocence, and reject the other which points to his guilt. If, on the other hand, one interpretation of the evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable." (Rule 26, revised, CALJIC)

■ Defendant cites State v. Bradley, 102 Ariz. 482, 433 P.2d 273 (1967) as the basis for his position. However, this case was expressly disapproved in a recent Arizona Supreme Court case, State v. Miller, 104 Ariz. 335, 452 P.2d 509 (1969), in which the Court set forth the Arizona rules on when the circumstantial evidence instruction is to be given in criminal cases.

"We have held that it is fundamental error for the court to fail to instruct on the probative force of circumstantial evidence if the prosecution must rely exclusively thereon for conviction. State v. Tigue, 95 Ariz. 45, 386 P.2d 402. Conversely, the failure to instruct on the effect of circumstantial evidence is not fundamental error if the prosecution does not rely exclusively thereon. State v. Maynard, 101 Ariz. 239, 418 P.2d 576.

Where the trial court is requested to instruct on the weight to be accorded circumstantial evidence, the authorities are fairly uniform in holding that it may be refused if there is direct evidence of the elements of the offense and the circumstantial evidence is only incidental and corroborative. [Cases cited] 104 Ariz., at 337, 452 P.2d, at 511.

■ The Court also cited some cases indicating when the instruction is not required. State v. Nortin, 170 Or. 296, 133 P.2d 252 (1943); Mainer v. State, 151 Tex.Cr.R. 532, 208 S.W.2d 900 (1948). These cases held that a confession is sufficient direct evidence to remove the need to give the instruction. This is but an affirmation of State v. Maynard, 101 Ariz. 239, 418 P.2d 576 (1966) which held specifically for Arizona that a confession is direct evidence and its presentation with circumstantial evidence will obviate the need for the instruction.

The trial court in the instant case did not err.

The third question presented by this appeal is whether the trial court erred in allowing the police officer to return to the stand after the prosecution had rested, to say he meant this defendant when he talked of Flores.

■ In 88 C.J.S. Trial § 104, the authors state the general rule and that in Arizona:

"A motion to reopen a case for the purpose of introducing further evidence in the cause is addressed to the sound discretion of the court."

State v. Cota, 99 Ariz. 237, 408 P.2d 27 (1965); State v. Favors, 92 Ariz. 147, 375 P.2d 260 (1962); State v. Moreno, 92 Ariz. 116, 374 P.2d 872 (1962). In Arizona, we also have Rule 43(j), Rules of Civil Procedure, 16 A.R.S.:

"Omission of testimony during trial. The court may at any time before commencement of the argument, when it appears necessary to the due administration of justice, allow a party to supply an omission in the testimony upon such terms and limitations as the court prescribes."

In the instant case, the State was allowed to reopen its case before the defendant rested and before the case was submitted to the jury. The gap in the testimony was pointed out by defense counsel on his motion for directed verdict at the end of the State's case.

Arizona cases have generally upheld the trial court in this matter of discretion. Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693 (1947); DeMund v. Benson, 33 Ariz. 374, 265 P. 84 (1928); Costello v. Cunningham, 16 Ariz. 447, 147 P. 701 (1915); Lillywhite v. Coleman, 46 Ariz. 523, 52 P.2d 1157 (1935).

However, in Bowman v. Hall, 83 Ariz. 56, 316 P.2d 484 (1957), the Arizona Supreme Court held that while the trial court had wide discretion to reopen the case, it

was an abuse of that discretion to fail to open when plaintiff had to prove a missing link in a prima facie contract case; to wit, that the contract had in fact been fulfilled. To do so and subsequently rest the judgment on the absence of the missing link was improper. See, State v. Cousins, 4 Ariz.App. 318, 420 P.2d 185 (1966).

■ In the instant case, the trial court pointed out that the *Bowman* case was applicable and felt obligated to reopen the deputy's testimony. We believe the trial court correctly reopened the case.

The last assignment of error raised by appellant is whether defendant's confession was voluntary and whether it should have gone to the jury.

■ In a recent case, State v. McFall, 103 Ariz. 234, 439 P.2d 805 (1968), the Arizona Supreme Court inquired into a forgery confession obtained from a drug addict. The Court set forth the standard:

"A confession to be free and voluntary within the meaning of the Fifth Amendment to the Constitution of the United States must not have been obtained by 'any direct or implied promises, *however slight*, * * *.' * * * There was, in the instant case, a clear insinuation that defendant might be given drugs implied from the fact that he was led to believe his request would be considered later. * * *

Moreover, the fact that defendant was not actually suffering acute withdrawal symptoms is of little significance. An addict lives with the certain knowledge that the time must inevitably come when another 'shot' or more drugs must be taken and, in dreadful anticipation of that time, must necessarily prepare for it." 103 Ariz., at 236–237, 439 P.2d at 807.

In the instant case, the defendant testified that on the 19th day of April, 1968, he had escaped from the Tucson City Jail. He was re-arrested on April 23rd. He stated that he was a narcotics user with a heroin habit and that immediately after his escape, he had obtained a "fix." After being put back in the city jail, he claims that he was sick and did not understand what was going on. He said he was taken for a two or three hour ride with a deputy sheriff and was driven by several burglarized houses. He stated to the sheriffs, "Yes, I made the burglary * * * so I could go to the County." (He was apparently referring to the County Jail and its more comfortable facilities.)

■ Defendant stated that he had stomach pains, headaches, vomiting and was unable to eat. He also claimed that he was not advised of his rights, although defendant is somewhat indefinite. The briefs indicate that he was informed of his constitutional rights at the county jail some time prior to, during, and after confessing to the burglary.

Detectives Davis and Devine testified at the hearing to suppress evidence that defendant's physical appearance looked normal, that he was not trembling, his nose was not running, and there was no indication of aches and pains. Detective Davis testified in part as follows:

"Q. * * * Now, at this time did you have a conversation with him?

A. The first conversation was had after Detective Devine and I identified myself. The first conversation made by Detective Devine.

Q. What was the conversation?

A. This was when Detective Devine removed the card from his wallet and read the rights to the subject, Mr. Flores.

Q. This is the everyday rights card that the police carry?

A. Yes.

Q. To your knowledge was it read to him?

A. It was.

Q. Did you have this conversation with him?

A. Yes.

Q. At this conversation did he say that he did not want to speak to you?

A. No, he did not.

Q. Did he indicate in any way that he wanted a lawyer present?

A. No, he did not.

Q. Did he indicate he wanted to be left alone?

A. No, sir.

Q. Did he indicate that he wanted to be left alone?

A. No, sir.

Q. Did he indicate that he wanted a doctor?

A. No, sir.

Q. What was the conversation at this time?

A. My conversation with the subject was with regard to the offenses, the burglary offenses he possibly might have been involved in the County. * * *"

According to the testimony, the next day Detectives Devine and Davis again advised the defendant of his rights and he voluntarily went with them in a county car and he was again advised of his constitutional rights. The following questions and answers were given:

"Q. * * * Then what happened?

A. Then I asked him: 'Now, having been advised of your rights, do you understand these rights and understanding these rights would you answer my questions?

Q. What did he say?

A. He shook his head, 'Yes.'

Q. An affirmative nod that you could see?

A. Yes, sir.

Q. You said like number one, number two, number three, number four, did you number them for him?

A. Yes, I did.

Q. At any time during the time while reading this card did he say, 'Stop, I don't understand a word'?

A. No.

Q. Did he at any time indicate then he didn't understand anything what you were talking about?

A. No.

Q. This was the second time in your presence it was read to him?

A. Not this card, but Detective Devine had.

Q. At any time did he indicate to you that he didn't understand the words?

A. No, sir. * * *"

After this warning, they proceeded to drive in the car toward the Silverbell, Sweetwater, Oxford Drive area. Before reaching this area, they stopped at a small restaurant at Silverbell and Grant Roads and defendant had a ham sandwich, potato chips and a soda pop. They then drove past several homes and defendant pointed out residences that had been burglarized, including the subject residence.

His statement was soon thereafter typed up and signed by him, although he claims the officers told him what to say to the typist. He claims he did not really understand that he did not need to sign it and that he did not understand all the words used in it.

The facts in this case substantially differ from those in *McFall* because there defendant's testimony was unimpeached either by testimony or circumstances. There, defendant was impliedly promised a "fix". In this case, we believe the trial court had ample evidence to support a finding that defendant voluntarily confessed to burglary. No issue of a "fix" occurred, or a promise therefor. The officers testified defendant displayed no withdrawal symptoms. Defendant admitted eating lunch. There was evidence the *Miranda* warnings had been given three times, and a rundown of the wording of the confession as well as the rights cards indicated defendant had an inarticulate but basic understanding of the wording.

Judgment affirmed.

MOLLOY, C. J., and HATHAWAY, J., concur.