714 P.2d 395

**STATE of Arizona, Appellee,**

v.

**Isiac THOMAS, Appellant.**

**No. 6576–PR.**

Supreme Court of Arizona,
En Banc.

Jan. 16, 1986.

Robert K. Corbin by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Lawrence H. Fleischman, Asst. Pima County Public Defender, Tucson, for appellant.

HAYS, Justice.

After a jury trial, defendant, Isiac Thomas, was convicted of one count of child molestation, A.R.S. § 13–1410, and two counts of sexual conduct with a minor under 18 years of age, A.R.S. § 13–1405. The

trial court sentenced defendant to the presumptive term on each count and ordered that the sentences run consecutively. The judgments of conviction and sentences were affirmed by the Court of Appeals in *State v. Thomas,* 148 Ariz. 253, 714 P.2d 423 (1985).

Defendant petitioned this court for review maintaining that the trial court (1) should have suppressed defendant's admission to the child molestation, and (2) improperly admitted testimony concerning the content of letters allegedly written to the victim by defendant. We granted review and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. §§ 12–120.24 and 13–4035.

The facts follow. Defendant, a sergeant in the Air Force, met his wife while stationed in England. After the marriage, he, his wife, and her three children moved to Tucson in 1979. The victim, the oldest child of defendant's wife, had been eight when her mother started dating defendant, and was twelve when her mother and defendant married.

While in Tucson, the family experienced several problems. Specifically the victim and her sister repeatedly "ditched" school and forged defendant's name on absence excuses. In March 1983, defendant learned of the frequent "ditching" and of the victim's sexual relationship with her twenty-year-old boyfriend. As a result, defendant withdrew both the victim and her sister from school and arranged for them to take "tele-teacher" classes.

Approximately one month later, the victim went to her high school campus and told one of her teachers that her stepfather had been sexually abusing her since she was eight years old. A few minutes later, the victim told her sister the same story. This revelation was made in the presence and hearing of the teacher's entire English class. The victim and her sister were immediately removed from their home by child protective services, and the charges herein were filed.

Defendant raises two issues concerning evidence presented at trial.

## ADMISSIBILITY OF CONFESSION

First, defendant argues that the trial court erred in not suppressing a statement in which he indicated that the victim was telling the truth. Specifically, defendant claims that the statement was given involuntarily as a result of a conversation he had with the arresting officer.

Following the victim's removal from her home, defendant was informed of the charges against him. He was read his rights and placed under arrest at Davis Monthan Air Force Base. After indicating that he understood his rights, defendant stated that he would answer the deputy's questions. At that time, defendant denied any kind of sexual activity with the victim.

The deputy then drove defendant to the sheriff's office. During the ride, defendant stated that 22 years of military service had gone "down the drain." In reply, the deputy remarked that he wasn't sure whether defendant, if found guilty, would be able to retire, and moreover, that in these cases, "the defendant never wins." According to defendant, the deputy then stated that while he wasn't "promising anything," an alternative to prison was available. If defendant confessed to the child-molestation charges, he would "probably" receive jail and probation, as long as he kept away from the children and attended meetings of Parents United. According to the deputy's testimony, he described the Parents United program to defendant as an alternative to the usual treatment of child molesters, and "might have" told defendant a confession was required to qualify for the program.

When the deputy and defendant arrived at the sheriff's office, defendant made a taped confession. In it, defendant stated that the victim was telling the truth, but denied remembering any specific details of the alleged molestation. At the end of the interview, the deputy asked defendant whether he had been "promised" anything, to which defendant answered in the negative. According to defendant, after the

tape recorder was turned off, he told the deputy "you know that I really didn't do it," to which the deputy responded, "well, then why did you say that you did?" The deputy testified that he didn't recall the latter exchange, but that it "may have" taken place.

Prior to trial, defense counsel moved to suppress defendant's confession as involuntary. The motion was denied and the confession was admitted at trial.

To be deemed free and voluntary within the meaning of the fifth amendment, a confession must not have been obtained by "any direct or implied promises, however slight, *nor by the exertion of any improper influence*" (emphasis added). *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964) (quoting *Bram v. United States*, 168 U.S. 532, 543, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897)). These standards also apply to the states through the fourteenth amendment. *Malloy v. Hogan*, 378 U.S. at 6, 84 S.Ct. at 1492.

In Arizona, confessions are prima facie involuntary and the burden is on the state to show that the confession was freely and voluntarily given. *State v. Hensley*, 137 Ariz. 80, 87, 669 P.2d 58, 65 (1983). The burden of proof is that of a preponderance of the evidence. *Id.* While the trial court's determination that a confession was voluntary will not normally be disturbed on appeal, the record must contain evidence from which the appellate court can find that the state carried its burden of proof. *State v. Hall*, 120 Ariz. 454, 456, 586 P.2d 1266, 1268 (1978). Bearing these requirements in mind, we have examined the entire record and find that it does not contain sufficient evidence to support the trial court's finding of voluntariness.

In the instant case, the record is clear that defendant denied any sexual involvement with his stepdaughter prior to his conversation with the deputy. The deputy then, in effect, told defendant that if he confessed, it would have a beneficial effect on his sentence, *e.g.*, non-prison treatment under the Parents United program. Further, defendant was told that if he were found guilty, the lack of a confession would have a detrimental effect on his sentence. It was only after the deputy "explained" the alternatives that defendant made the incriminating admissions. Clearly, the deputy's actions in obtaining the confession amounted to the "exertion of any improper influence" and were therefore impermissible. *Malloy v. Hogan, supra. Compare State v. Burr*, 126 Ariz. 338, 340, 615 P.2d 635, 637 (1980) (defendant led to believe he would not be prosecuted if he agreed to give police information concerning a crime); *State v. McFall*, 103 Ariz. 234, 236, 439 P.2d 805, 807 (1968) (drug-addicted defendant led to believe he would be given drugs if he cooperated).

Moreover, defendant testified that, while driving to the sheriff's office, the deputy told him "[in] these cases, the defendant never wins." The deputy also stated that, while he wasn't promising anything, "if [defendant] would confess," his sentence would "probably" be a combination of jail time, probation, and attendance at meetings of Parents United. Defendant also testified that, after giving the recorded confession, he immediately recanted. When asked if the foregoing events had transpired, the detective repeatedly responded, "I don't recall exactly" or "I don't remember."

Such a response is insufficient to create a factual issue on the point in question. As we stated in *State v. McFall, supra*, a police officer's statement that he does not recall the alleged inducement is insufficient to rebut the allegation that the inducement was offered:

An answer by a witness that he does not remember whether an event occurred is not a denial that the event did not occur. Such an answer does not contradict the defendant's positive assertion that when he asked for the tablets the officers replied, "that matter would be discussed after we had taken care of the business at hand * * * " The defendant's testimony is unimpeached, either by the officers' testimony or other testimony or

circumstances in the case. It should have been accepted at face value.

It is clear from the record that the prima facie involuntariness of the confession was not rebutted. Thus, the state did not establish voluntariness by a preponderance of the evidence. *State v. Hensley, supra.* The statement should have been suppressed.

## ADMISSIBILITY OF LETTERS

■ Defendant contends that the trial court erred in admitting testimony concerning the content of letters allegedly written to the victim by defendant. During the trial, the state introduced testimony by the victim that defendant had written her incriminating letters. The victim stated that she had not kept the letters, but rather had given them to her boyfriend.

Over objection by the defense, the boyfriend testified that he had been given the letters by the victim, but that he had thrown them away when they stopped dating. He stated that he had only "glimpsed" through the letters and did not recall their entire contents. However, he did recall some statements that the writer would "do anything" to win the victim over, that he didn't want anyone else to have her, and that he was trying to teach her "discipline." The boyfriend also recalled that the letters were signed with the name "Thomas." He stated that he could tell the letters were not in the victim's handwriting; however, he could not identify the signature as that of the defendant's. The evidence was supposedly admitted to impeach defendant's testimony that he had not written the letters.

Defendant argues that this evidence should have been excluded because of the limitation on the use of statements established by *State v. Cruz*, 128 Ariz. 538, 627 P.2d 689 (1981). In *Cruz*, we stated:

Yet, in the present case, we have a statement which does more than merely impeach the witnesses' statement; rather, it relates directly to the guilt of the defendant. This presents a situation where the possibility of prejudice is inordinately high and the reliability of the statement requires resolution of a swearing contest between the declarant and the person to whom the statement was allegedly made.

. . . .

Even though an out-of-court statement may be used to cast doubt on a witness' credibility, when it contains the dual purpose of tending to prove a defendant's guilt, it should not be admitted (citations omitted).

128 Ariz. at 540, 627 P.2d at 691.

In a subsequent case, *State v. Allred*, 134 Ariz. 274, 655 P.2d 1326 (1982), this court set forth a list of factors to be considered when impeaching testimony is used for substantive purposes. In doing so we recognized that the principal focus of the analysis must be the danger of unfair prejudice that could result. If the evidence is unfairly prejudicial, it must be suppressed. *State v. Allred*, 134 Ariz. at 277, 655 P.2d at 1329. The following factors are among the circumstances to be considered:

1) the witness being impeached denies making the impeaching statement, and

2) the witness presenting the impeaching statement has an interest in the proceeding and there is no other corroboration that the statement was made, or

3) there are other factors affecting the reliability of the impeaching witness, such as age or mental capacity, . . .

4) the true purpose of the offer is substantive use of the statement rather than impeachment of the witness,

5) the impeachment testimony is the only evidence of guilt.

*Id.*

In the present case, it is undisputed that the witness being impeached (defendant) denies making the impeaching statement (the letters to the victim). Thus, the first of the *Allred* factors is clearly met.

Second, the witness who first presented the impeaching statement, the victim, clearly has an interest in the proceeding. Moreover, the testimony of the victim's boyfriend, although more attenuated, still

shows an interest in the proceeding. He is a former boyfriend of the victim, and the letters allegedly voiced defendant's objection to his stepdaughter's dating this boy. Thus, at the time the letters were written, the boyfriend had a personal interest in the subject matter of the testimony.

Third, there are other factors affecting the reliability of the boyfriend's testimony. Although he was of sufficient age and mental capacity, his reliability is somewhat diminished because he admitted to only "glimpsing" through the letters. Further, the statements to which he testified at trial were the only statements from the letters which he could recall. Such sketchy recall raises doubt as to the reliability of his testimony.

Fourth, the true purpose of the offer is the substantive use of the statement rather than impeachment of the witness. The existence of this factor is undisputed, as the state itself admits the letters were used for substantive purposes.

Finally, the impeachment testimony is the only evidence of guilt other than the victim's testimony. The evidence presented by the state at trial consisted solely of: (1) defendant's confession, which we have already held to be involuntary; (2) the victim's testimony; (3) the testimony concerning the letters; and (4) the testimony of the victim's sister, foster father, teacher, psychologist, and counselor that, in their opinions, the victim "appeared to be" telling the truth. In other words, aside from defendant's confession, which we have already concluded was involuntary, and the testimony about the letters, the only evidence to resolve the "swearing contest" between defendant and the victim was the opinion evidence of other witnesses who, like the jury, were merely making a judgment as to the victim's credibility. Thus, when admitted, the testimony concerning the letters provided the only concrete link between defendant and the crime.

Under these circumstances, we find that the danger of unfair prejudice was extremely high. Therefore, the admission of the testimony concerning the letters and its use as substantive evidence of the crime and defendant's guilt amounted to an abuse of discretion.

Because defendant's statement to the deputy and the testimony concerning the letters were improperly used at trial, we reverse the convictions of child molestation and sexual conduct with a minor. Accordingly, the opinion of the Court of Appeals is vacated, and the matter is remanded to the trial court for proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.