747 P.2d 620

**STATE of Arizona, Appellee,**

v.

**William Earl DENNING, Appellant.**

**No. 1 CA–CR 11042.**

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 15, 1987.

460

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., Georgia B. Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Kenneth D. Everett, Mohave Co. Public Defender by Michael J. Burke, Deputy Public Defender, Kingman, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

Defendant was arrested in Laughlin, Nevada, and jailed in Las Vegas after the victim of a sexual assault recognized him as her assailant. Shortly after the arrest, Officers Robin Holmes and Anthony Rupple of Bullhead City, Arizona, traveled to Las Vegas to question the defendant about a series of sexual assaults which had occurred in the Bullhead City area. At the request of the defendant the interview, which lasted approximately 1½ hours, was not taped. *Miranda* warnings were given, but the defendant did not sign a waiver. At the interview, the defendant admitted kidnapping and sexually assaulting five victims in the Bullhead City area. He denied involvement in several other sexual offenses. The defendant was eventually transferred to the Mohave County Jail.

A grand jury issued an indictment charging the defendant with four counts of sexual assault, three counts of sexual conduct with a minor, and five counts of kidnapping. He negotiated a plea agreement and pled guilty to two counts of sexual assault, dangerous crimes against children, in violation of A.R.S. §§ 13-1406 and 13-604.01.

The defendant subsequently filed a motion to withdraw his guilty plea. After an evidentiary hearing on the matter, the trial judge denied the defendant's motion. The defendant appeals this denial. He raises two issues:

1. Did the trial court establish a sufficient factual basis for his plea?

2. Does the record establish a knowing, intelligent and voluntary plea?

### FACTUAL BASIS

The defendant claims that the trial court failed to establish a factual basis for each element of the offenses contained in the plea agreement. *See* Rule 17.3, Arizona Rules of Criminal Procedure; *State v. Carr*, 112 Ariz. 453, 455, 543 P.2d 441, 443 (1975). The defendant pled guilty to two counts of sexual assault against two girls under the age of fifteen in violation of A.R.S. § 13–1406, which reads:

A. A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person.

B. ... If the victim is under fifteen years of age, sexual assault is a class 2 felony and is punishable pursuant to § 13–604.01.[1]

The defendant claims that at the change of plea hearing the judge failed to establish the defendant's knowledge of each victim's age at the time of the offense and failed to establish that he threatened to use force against the victims.

### KNOWLEDGE OF VICTIM'S AGE

■ We disagree with the defendant's contention that his knowledge that the victim was under age fifteen at the time of the assault is an element of the crime of sexual assault, a dangerous crime against children. The elements of the substantive crime of sexual assault, outlined in A.R.S. § 13–1406(A), are: 1) intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person, and 2) without the consent of the victim. Subsec-

tion (B) of A.R.S. § 13–1406 does not establish the additional element that a defendant know the victim is under fifteen years of age. Instead, it merely allows for the enhancement of the sentence if the victim is under fifteen years of age. In this case, both victims were indisputably under fifteen years of age, and this fact triggers the enhancement provision.

### LACK OF CONSENT

The defendant also claims that the record fails to establish that the victims did not consent to sexual intercourse. We disagree. In the context of this case, "without consent" means that the victim was "coerced by the immediate use or threatened use of force against [her] person or property." A.R.S. § 13–1401(5)(a).

At the change of plea hearing, the judge questioned the defendant about the first count of sexual assault:

THE COURT: Mr. Denning, I'd like you to tell me in your own words what you did that makes you believe you're guilty of this particular offense. This is the one on November 22 at Betsy Lane involving [M].

Did you have some sort of sexual contact with a young girl on that date?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you have sexual intercourse with her?

THE DEFENDANT: Yes.

THE COURT: And was that voluntary on her part or did you force her to do it?

THE DEFENDANT: Verbally forced her to.

THE COURT: All right. Did you threaten her in some way if she did not comply with what you were doing?

THE DEFENDANT: Right, verbally threatened her if she didn't do what I was telling her.

THE COURT: Did you threaten to inflict some sort of injury upon her?

THE DEFENDANT: No, Your Honor.

THE COURT: What did you threaten to do?

---

1. Arizona Revised Statutes § 13–604.01 creates a presumptive term of imprisonment of 20 years for an adult convicted of a dangerous crime against children including sexual assault.

THE DEFENDANT: Nothing that I remember. I just verbally told her to do something or—

THE COURT: All right. Did you—

THE DEFENDANT: —or else.

THE COURT: Or else what?

THE DEFENDANT: Or else—I don't remember really. I just—I just told her it would be good to pay attention to me, to do what I tell you.

THE COURT: Did you have a weapon of any sort on you?

THE DEFENDANT: No, Your Honor. I never used a weapon in any of the offenses.

The judge then questioned the prosecutor, Mr. Zack:

THE COURT: Mr. Zack, what would the state's case be? What additional do you want to tell me?

MR. ZACK: Your Honor, the victim did report that she was verbally threatened with bodily injury in the event that she did not comply with the defendant's demands of a sexual nature. The victim was picked up as she was on a roadway, walking on a road, and she was forced to lay down in the seat, and a shirt or some clothing was placed over her head. She couldn't see where she was going, and the same scenario on all the offenses charged.

The defendant drove her to a location where he, in this particular case, forced oral sex upon her and engaged in anal sexual intercourse. The victim in this particular case, Miss [M], thereafter was at a bowling league or party at the Edgewater and saw the defendant, recognized who he was, and reported to the police, where he was subsequently apprehended.

■ The defendant contends that his negative response to the judge's question, "Did you threaten to inflict some sort of injury upon her?" and his "vacillating" during the questioning establish a lack of factual basis on the element of lack of consent. We disagree. The defendant's testimony, supplemented by the prosecutor's uncontradicted narration, sufficiently establishes that the defendant threatened to use force against the victim.

The judge next questioned the defendant about the second count of sexual assault:

THE COURT: Mr. Denning, the state would have to prove the same elements for this offense. Did you on April 24 somewhere in Bullhead City have some sort of sexual contact with a [WG]?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And was that sexual intercourse or oral sex or what or do you remember?

THE DEFENDANT: I don't remember, Your Honor.

THE COURT: And—

THE DEFENDANT: I think it was regular sex.

THE COURT: Regular vaginal sexual intercourse?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Was that against her will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you basically do what Mr. Zack has suggested, you know, threaten her verbally if she didn't go along with you?

THE DEFENDANT: I didn't use much verbal threats or any threats at all. Most of the girls that I did pick up were —went along with me, told me I was a real nice guy. They didn't understand why I was doing what I was doing. I told them I didn't understand it either. I've got a problem. I went through with it.

THE COURT: Mr. Denning, let me just make sure that there's no misunderstanding here. Certainly you're not suggesting to me that these people voluntarily had sex with you, are you? You're not telling me that, are you?

THE DEFENDANT: No, Your Honor.

THE COURT: So you're admitting that these—

THE DEFENDANT: They had no idea they were going to do it. They didn't deny the fact that they knew what the situation was they were in.

THE COURT: By the situation you mean the situation that they would possibly get hurt if they didn't go along with what you wanted them to do?

THE DEFENDANT: I don't know what I really would have did, Your Honor. I don't think I could hurt anybody like that.

THE COURT: You didn't let the girls know you weren't going to hurt them?

THE DEFENDANT: Right.

The judge then questioned the prosecutor:

THE COURT: Okay. Mr. Zack, anything that you want to add to flesh out the factual basis on count four?

MR. ZACK: Your Honor, the scenario is very much similar to the offense involving Miss [M]. In this particular case the defendant also picked her up as she was walking home, blindfolded her with a T-shirt, drove her to an undetermined location in the Bullhead City area, where he did engage in vaginal sexual intercourse with her.

In this particular case the victim was forced by the defendant to write down her name and address on a piece of paper. Upon a search of the defendant's vehicle following his arrest, that same piece of paper was found in the ashtray of the vehicle owned by the defendant. . . .

THE COURT: All right. Well, I certainly don't have any problem finding that these acts were committed without the consent of the victims.

■ The defendant claims his testimony concerning WG is inconsistent and therefore insufficient to establish lack of consent where he testified that he had intercourse with her against her will and then stated that he did not "use much verbal threats or any threats at all." We disagree. The defendant's testimony sufficiently establishes a factual basis for the lack of consent element. The defendant agreed with the judge that WG did not consent, that she did not voluntarily have sex with him, and that he did not let her know that he was not going to hurt her. Additionally, although we recognize that this alone would not satisfy the factual basis, we note that the prosecutor's narration clearly indicates that the defendant's actions threatened the victim and coerced her against her will, whether the defendant verbally expressed threats or not. The defendant in no way took issue with the description of what happened. *See State v. Hickey*, 110 Ariz. 527, 521 P.2d 614 (1974).

## KNOWING, INTELLIGENT, AND VOLUNTARY PLEA

At the evidentiary hearing on his motion to withdraw his plea, the defendant testified that Officers Holmes and Ruppel promised him at the May 28 interrogation in Las Vegas that, if he pled guilty to the crimes charged against him, he would be sent to a mental institution for six to seven years instead of prison. He claims that he pled guilty because he thought time in a mental institution would cure his gambling habit. The defendant claims that his plea was not knowing, intelligent, or voluntary because it was induced by the promise. *State v. Lerch*, 107 Ariz. 529, 530, 490 P.2d 1, 2 (1971).

■ A judge has the discretion to allow a withdrawal of a plea of guilty when necessary to correct a manifest injustice. Rule 17.5, Arizona Rules of Criminal Procedure. After a review of the entire record, we believe that the trial judge did not abuse his discretion in denying the defendant's motion to withdraw his plea. *See State v. Wilson*, 95 Ariz. 372, 373, 390 P.2d 903, 904 (1964).

The defendant claims that "substantial objective evidence" in the record establishes that the officers made the promise to him. He focuses on a colloquy between his attorney, Kenneth Everett, and Officer Holmes, which occurred at the evidentiary hearing on the motion to withdraw the plea:

Q (BY EVERETT). Did you ever comfort him, make him feel more at ease by telling him that the mental evaluation would also help him in regards to his gambling problem?

A (BY HOLMES). I don't know if it was specifically mentioned. As far as what he would receive help for I don't know.

Q. Do you recall?

A. No.

Q. Isn't it true that you did mention—isn't it true that you mentioned a desire for him to get some mental help? Wasn't that mentioned before he started talking about the offenses?

A. Yes.

Q. It is your practice, is it not, Detective Holmes, not to make promises to a particular interviewee about what his sentence might be?

A. Yes.

Q. Why is that your policy?

A. Because I'm not in a position to promise anybody anything as far as what the sentence will be. That's up to the—up to the judge in trial court.

The foregoing testimony does not establish that Officer Holmes made any promise to the defendant in exchange for a guilty plea. The transcripts of the hearing indicate that Officer Holmes, in response to the defendant's expressed concern over his mental health, explained to the defendant the procedure of a Rule 11 examination and told the defendant that he would request the examination. Holmes testified, however, that he never promised the defendant psychiatric help or placement in a mental institution in exchange for a plea of guilty. The testimony of Anthony Rupple, the other officer who was present, was consistent with what Officer Holmes said.

■ The defendant, relying on *State v. Thomas*, 148 Ariz. 225, 714 P.2d 395 (1986), argues that Holmes' testimony that he did not recall specifically mentioning to the defendant if a mental examination would help his gambling problem is insufficient to rebut the defendant's allegation that his plea was induced. We disagree. *Thomas* held that a police officer's statement that he does not recall the alleged inducement of a confession is insufficient to rebut the allegation that an inducement was offered. *Id.* at 227, 714 P.2d at 397. *Thomas* involved an induced confession, not a plea of guilty. But, even if we applied *Thomas* to the defendant's claim, the transcript of the evidentiary hearing clearly shows that Officers Holmes and Rupple contradicted the defendant's assertion that he was promised institutionalization in exchange for a guilty

plea. *See also State v. McFall*, 103 Ariz. 234, 439 P.2d 805 (1968). Although Officer Holmes at one point in his testimony did not recall whether he told the defendant that a mental examination would help the defendant's gambling problem, his testimony was not in response to a question concerning a promise made to the defendant and does not leave the defendant's testimony unimpeached.

■ Apart from the evidentiary hearing itself, the extended record contradicts the defendant's claim. The defendant never discussed "the deal" with the officers after the Las Vegas interrogation. Nor did he mention the promise to the probation officer preparing the presentence report, to the doctors conducting the Rule 11 examinations, or even to his own attorney until one week before sentencing. The defendant claimed that he remained silent because he did not need to tell anyone because he knew he was going to a mental institution. However, the plea agreement makes it clear that the defendant understood that he would receive 30 years in prison. It made no provision for mental institutionalization. Two Rule 11 examinations determined that the defendant had a rational and factual understanding of the consequences of entering into a plea. At the change of plea hearing the judge thoroughly questioned the defendant about his understanding of the plea and whether he entered into it voluntarily. The defendant never mentioned the alleged "deal":

THE COURT: And you understand that under the plea agreement I don't have any discretion as to what your sentence is going to be? If I accept the plea agreement, you'll get 30 years in prison, and the only alternative I suppose that I would have would be to reject the plea agreement as either being too easy or too hard, but if I accept the plea agreement, you will receive the two 15 year prison sentences one after the other for a total prison sentence of 30 years; you understand that?

THE DEFENDANT: Yes, Your Honor.

* * *

THE COURT: Have you read the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Did Mr. Porter explain it to you?

THE DEFENDANT: Yes.

THE COURT: Do you believe that you understand the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Does the plea agreement contain everything that you've agreed to with the State?

THE DEFENDANT: Yes.

THE COURT: Do you agree with everything that's in the plea agreement?

THE DEFENDANT: Yes.

* * *

THE COURT: Mr. Denning, were any promises made to you to get you to plead guilty other than the promises that are contained in the plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Was any force used against you to get you [to] plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Were any threats made against you to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

The defendant's acknowledgment that he voluntarily, knowingly and intelligently entered into his plea and his representation by counsel during the change of plea also strongly militate against the conclusion that the plea was involuntary. *Lerch,* 107 Ariz. at 530, 490 P.2d at 2; *State v. Hamilton,* 142 Ariz. 91, 93, 688 P.2d 983, 985 (1984).

Judgment of conviction and sentence affirmed.

SHELLEY, P.J., and GRANT, J., concur.