## STATE v. WILLIAMS.

(Filed February 26, 1901.)

1. RAPE—*Fraud—Personating Husband—The Code, Sec. 1103.*

   A person who, by his *acts* or *conduct,* induces a woman to believe he is her husband and has intercourse with her, is guilty of a felony. *State v. Matthews,* 121 N. C., 604.

2. EVIDENCE—*Sufficiency—Rape—The Code, Sec. 1103.*

   The facts in this case held sufficient to submit to jury as to guilt of defendant.

THIS WAS AN INDICTMENT against C. M. Williams, heard by Judge *T. A. McNeill* and a jury, at November Term, 1900, of BEAUFORT County Superior Court. From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer,* Attorney-General, and *Chas. F. Warren,* and *W. B. Rodman,* for the State.

*Small & McLean,* for the defendant.

CLARK, J. The multiplication of law reports makes it desirable that the courts should refrain from filing opinions which state no new points or new application of settled principles. Many courts now act upon that principle, and the Supreme Court of Tennessee (and possibly others) have formulated a rule of court to that effect. For the same reason when an opinion is filed it is not necessary to do more than decide, without discussing in the opinion, the exceptions which present only matters which have been heretofore well settled.

This is an indictment under The Code, sec. 1103, for carnal knowledge of a married woman by fraud in personating her husband. After a careful examination of each and every

exception we find no error. We will consider the only exception which can possibly present a hitherto undecided aspect. The prayer (the refusal of which is set out as exception 13), that "upon all the evidence, if believed, the defendant could not be convicted of fraudulently personating the husband under the act upon which the indictment was drawn," could not be sustained unless the act required that there should be fraudulent representations by words. In a transaction of this nature, that would hardly be possible. The "fraudulent personation" must also necessarily be done by "acts and conduct" of defendant. This indeed is recognized by defendant's tenth prayer for instruction. If the prosecutrix's evidence is believed, there was such evidence sufficient to go to the jury. The wife was visiting her mother, who was ill; the defendant was there that evening and saw her. She was expecting her husband that night. During the night the defendant entered the room where prosecutrix was sleeping on a pallet, laid down and squeezed her hand and pulled her towards him; she asked, "Who is that?" Not distinguishing any answer, she said in a whisper, "When did you come?" supposing he was her husband. The defendant replied in a whisper, "A little while ago," so low that she did not suspect that it was not her husband's voice. He continued to pull her hard and she got over nearer to him, so that he accomplished his purpose; the prosecutrix was much worn out with nursing and want of sleep; her grandmother was at the other edge of the pallet.

Without going into further details, it was evident to the jury, if the jury believed this testimony, that the defendant laid down in the night time by a sleeping woman who could not see him when she awoke, and to whom he made known that he sought her embrace by squeezing her hand and pulling her to him, and that when she asked "When did you come?" he knew that she thought he was her husband whom she was

expecting, and not himself whom she had already seen and whose time of arrival was already known to her.   His reply, "A little while ago," spoken in a whisper so low as to disguise his voice, could have been intended only to prolong the impression that it was her husband, and to deceive her into yielding her body to his embraces; certainly it was sufficient evidence, even without the further evidence of his confession that the prosecutrix was fooled and thought he was her husband, to submit to the jury.   He knew he was not the woman's husband; he knew she thought he was; he so acted as to keep up the delusion until he accomplished his purpose. It is not essential whether he went to the room for that purpose or not, nor whether he originally created the delusion or not.   Even if he laid down on the pallet by mistake and finding a woman there, intended by squeezing and pulling her hand to solicit her consent to illicit intercourse, or if according to his own evidence she threw her arm and leg over him and thus aroused his passions, still when he found by her whispered query, "When did you come?" that he was mistaken for her husband, and continued the delusion by speaking so as to disguise his voice and thus obtained the gratification of his passions, he knew that he was obtaining his end by fraud in personating her husband.   "The voice was the voice of Jacob, but the hand was the hand of Esau," is the story of an ever-memorable fraud, but here neither hand nor voice created a suspicion in the mind of the betrayed.

No error.