367 P.2d 227

**STATE of Arizona, Appellee,**

**v.**

**Arnold Ballesteros NAVARRO, Appellant.**

**No. 1201.**

Supreme Court of Arizona, En Banc.

Dec. 13, 1961.

Jose del Castillo, Tucson, for appellant.

Robert W. Pickrell, Atty. Gen., Harry Ackerman, County Atty. of Pima County, and Arthur R. Buller, Deputy County Atty., for appellee.

UDALL, Justice.

Defendant, Arnold Ballesteros Navarro, appeals from a conviction of and a five to six year prison sentence for the rape by deception of one Dora Alice Gonzales. This case is one of first impression in Arizona in that in involves the first conviction obtained under A.R.S. § 13–611, subd. 6 (1956) which defines the crime of rape to include the situation:

> "Where the female submits under a belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense or concealment practiced by the accused with intent to induce such belief." [1]

The incident in question occurred in the early morning hours of Sunday, December 4, 1960, at the Tucson one-bedroom apartment of the complaining witness and her husband of one month, Charlie Gonzales. After working all day Saturday as a saleswoman at Levy's Department Store in Tucson, Dora Gonzales returned home to prepare supper for her husband and his cousin, Armanda. Gonzales. Feeling tired after supper she retired to the bedroom about 9:00 or 9:30 p. m. to read several magazines before going to sleep. This coincided with the arrival of defendant and two others, Martin Rivera and Tommy Bracamonte.

The five young men then began an evening of drinking beer while watching TV,

1. State v. Williams, 128 N.C. 573, 37 S.E. 952 (1901) appears to be the only other reported case in which a rape conviction under a statutory provision similar to A.R.S. § 13–611, subd. 6 was sustained. Cf. Draughn v. State, 12 Okl.Cr. 479, 158 P. 890 (1916); Payne v. State, 38 Tex.Cr.R. 494, 43 S.W. 515 (1897). Absent such a statute the cases conflict as to whether carnal knowledge of a woman by impersonating her husband constitutes rape. See generally 75 C.J.S. Rape § 16 pp. 482–483.

playing the guitar, etc. At approximately 12:30 or 1:00 a. m., Dora got up and prepared coffee for the men, with the exception of Bracamonte who had left earlier. She then returned to the bedroom and went to sleep.

The next thing Dora Gonzales remembered was waking from a sound sleep (sometime between 2:00 and 3:30 a. m.) with defendant on top of her attempting to have sexual intercourse with her. Believing defendant to be her husband she submitted to him. In a matter of seconds, however, she became aware that he was not her husband [2] and cried out asking who he was. He covered her mouth with his hand and told her who he was and not to scream. When she cried and resisted further defendant bolted from the house, leaving his T-shirt and leather jacket behind.

The complaining witness, hysterically crying defendant's name, ran to the living room where she awakened her husband from a drunken stupor. At her request he drove her to his mother's house where Dora sobbed out the details of her experience to the mother.

On December 5, 1960 a warrant for defendant's arrest was issued; three days later, however, he voluntarily appeared at the police station and gave them a detailed statement. In this statement, later admitted in evidence at the trial with no question raised as to voluntariness, defendant's version of the events of December 4, 1960, was the same as that of the complaining witness.[3]

---

[2] "Q. Now, Dora, then after you put your hand on the back of his head and the back, on his back, of him, then what happened after that, if anything? A. Well, at that time something came to my mind that it couldn't be my husband because the defendant had his, just recent, a haircut, I could feel it, and my husband hadn't had a haircut, and the smell of tobacco on his breath. My husband doesn't smoke." R.T. 23-24.

[3] "Q. At any time, did DORA ALICE GONZALES intice you into this act? A. She didn't.

"Q. In your own words, tell us what happened in the early morning hours of 12-4-60, while you were at the home of the Gonzales family, at 345 E. Rodeo Dr. A. Well, we were drinking at CHARLIE GONZALES' house (DORA'S husband) and then he passed out. I went to DORA'S bedroom, got in bed with her; when I got in bed with her, she thought I was her husband and kept calling me "CHARLIE". I didn't want to talk, because she would know I wasn't her husband and I took her pajama bottoms off. She didn't know that I wasn't her husband until we had had intercourse. She started to cry and I placed my hand over her mouth so she wouldn't scream and told her this was Arnold. She then told me to leave and I told her I was sorry and then I started to leave. I left behind my T-shirt and my black leather jacket. When she got up, she was crying and then she tried to wake her husband up, CHARLIE, who was still passed out. This is when I left.

"Q. You stated that you had intercourse with DORA. Did you make a penetration? A. Yes, sir.

"Q. Did you reach a climax during intercourse? A. Yes, sir.

At the trial the complaining witness, her husband, and his mother testified to the events above related. Defendant's statement was then admitted in evidence. And later at the trial, on cross-examination by the county attorney, defendant admitted having had intercourse with Dora Gonzales on the night in question. R.T. 143.

On appeal defendant's nine assignments of error comprise but two basic contentions. The first is that defendant was denied an opportunity to be heard in the due process sense on his motion to quash the information.

Defendant's written motion to quash was submitted to the court on January 18, 1961. A memorandum in opposition thereto was filed by the county attorney on January 23, 1961, and the motion was denied on February 1, 1961. Defendant argues that he was improperly denied an opportunity to present oral argument and other evidence in support of his motion. This argument is grounded on the command of Rule 172 of the Arizona Rules of Criminal Procedure, 17 A.R.S., that:

"The motion to quash shall be heard immediately on being made unless for good cause the court postpones the hearing."

Rule, 365, however, provides that:

"The superior court in each county may from time to time make and amend rules governing its practice not inconsistent with these Rules. * * *"

And Rule VIII of the Superior Court of Pima County provides in pertinent part that:

"Any party desiring to be heard on any such pleading or motion, however, may serve and file with his pleading or motion, or with his memorandum of points and authorities, a notice of hearing, the time for which shall be set in accordance with the schedule set out in Rule VI, but not less than five (5) days after the filing of the notice of such hearing."

No such hearing was requested in this instance. That defendant's counsel was familiar with the notice of hearing procedure outlined in the local rule of court is evidenced by his availing himself of its provisions on two other occasions during the trial.[4] In any event counsel was charged with knowledge of the local rule requiring

"Q. Were you drinking prior to attacking DORA, and if so, what and how much? A. Yes, I was drinking beer, approximately 8 cans. I don't remember for sure how much I drank.
"Q. During the entire act of intercourse with DORA, it is true that you let DORA believe you were her husband. A. Yes, sir."

4. Defendant's counsel served notice of hearing on the county attorney for arguments on motions for continuance and in arrest of judgment. Record on Appeal, items 9 and 16.

requests for oral argument. And failure to comply therewith amounted to a waiver of whatever right defendant may have had to a hearing on the motion to quash.

██ Defendant's second assertion is that his voluntary statement to the police was improperly admitted in evidence because the corpus delicti had not been first established by the prosecution. The general rule is that " * * * before the state can use a confession or incriminating statements of a defendant there must be submitted other evidence outside the confession or statements tending to prove corpus delicti, i. e., that someone committed the crime with which the defendant is charged and which he has confessed or admitted." State v. Hernandez, 83 Ariz. 279, 281, 320 P.2d 467, 468 (1958). The corpus delicti in a rape case is the fact that the complaining witness has been ravished against her will. 75 C.J.S. Rape § 67, p. 545. Here there was adequate testimony to that fact (prior to admission of the defendant's statement) by Dora Gonzales herself, and without more, her testimony, if believed by the jury, was sufficient not only to establish the corpus delicti but also to convict. For, "a conviction may be had under the law of Arizona upon the testimony of the prosecuting witness alone, and the truth of her story is for the jury, unless such testimony is of a nature which is incredible or unreasonable." Zabala v. State, 39 Ariz. 123, 126, 4 P.2d 390, 391 (1931). See also State v. Hilliard, 89 Ariz. 129, 359 P.2d 66 (1961); Trimble v. Territory, 8 Ariz. 273, 71 P. 932 (1903).

██ Moreover the fresh complaint made by the complaining witness to her mother-in-law shortly after the incident in question was corroborative of the fact that she had been ravished. State v. Brady, 66 Ariz. 365, 371, 189 P.2d 198, 202 (1948). See also Browning v. State, 53 Ariz. 174, 185, 87 P. 2d 112, 117 (1939).[5] And the fact and details of such complaint were also testified to by the complaining witness, her husband and his mother prior to admission of defendant's statement.

Accordingly, the trial court properly admitted the defendant's voluntary statement

---

5. " * * * [C]omplaint of the outrage by the prosecutrix at the earliest opportunity has frequently been denominated by the courts as a circumstance corroborative of her testimony. * * * [citations omitted] The natural instinct of a female thus outraged and injured prompts her to disclose the occurrence at the earliest opportunity to some relative or friend who has interest in her welfare; and the absence of such a disclosure tends to discredit her as a witness, and may raise an inference against the truth of the charge. To avoid such discredit and inference, it is always competent for the prosecution to show, as a part of its case, that complaint was made recently after the commission of the outrage, and this fact is treated as a circumstance corroborative of the complainant's testimony." Trimble v. Territory, 8 Ariz. 273, 277, 71 P. 932 (1903).

190

in evidence. There being no error the conviction is affirmed.

STRUCKMEYER, C. J., CHARLES C. BERNSTEIN, V. C. J., and JENNINGS and LOCKWOOD, JJ., concur.