[No. B211365. Second Dist., Div. Six. Dec. 23, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
SAQUEO L. LEAL, Defendant and Appellant.

Counsel

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Stephanie C. Brenan and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PERREN, J.**—Appellant Saqueo L. Leal entered a residence through an open window in the middle of the night and digitally penetrated a woman as she slept in bed next to her husband. Believing that appellant was her husband, the woman did not resist and submitted to sexual intercourse. Appellant was subsequently convicted of rape and sexual penetration by artifice, pretense or concealment (Pen. Code,[1] §§ 261, subd. (a)(5), 289, subd. (f)), and assault with intent to commit rape (§ 220, subd. (a)).[2] He was sentenced to six years in state prison.

Appellant contends the evidence is insufficient to support his convictions. He also contends the court erred in failing to instruct the jury on the lesser included offense of simple assault, and that he was improperly convicted of assault with intent to commit rape because the crime is a lesser included offense of the charges of rape and sexual penetration of which he was charged and convicted in counts 1 and 2. We affirm.

### STATEMENT OF FACTS

On the night of June 29, 2002, T.C. and her husband A. celebrated her birthday at their duplex in Los Angeles. Over the course of the evening, they both drank large amounts of alcohol and became highly intoxicated. About 1:00 a.m., T.C. changed into pajamas and went to sleep in the bedroom. A. joined her in their queen-sized bed a few minutes later.

Sometime during the night, T.C. was awakened in the dark when she felt a finger in her vagina. She then felt her vagina being penetrated by a penis as she was lifted up and placed on the edge of the bed. T.C. believed it was A.

---

[1] All statutory references are to the Penal Code.

[2] Appellant was also charged with committing first degree burglary in violation of section 459, but the count was dismissed pursuant to section 995 on the ground it was barred by the statute of limitations.

having sex with her, although they had never had sex in that manner before. In fact, it was appellant, a stranger who had entered the duplex through a window.

As T.C. was being lifted, she placed her hands on appellant's back. T.C. did not feel any hair, which seemed strange because A. has hair on his back. T.C. also felt stubble on appellant's face when he kissed her, and found the sensation also strange because A. did not have facial hair. She also noticed that appellant was rough when he penetrated her, while A. always waited until she was lubricated. Also, A. usually woke her up and asked if she wanted to have sex. Due to her intoxicated state, she was unable to fully process the significance of these differences.

When the encounter ended, T.C. lay back on her pillow and saw what appeared to be a silhouette of someone leaving the room. She then reached across the bed and felt A. lying there. T.C. said, "I think, A., someone's here." A. did not respond, and T.C. went back to sleep.

About 5:00 a.m., T.C. awoke and began to remember what had happened. She woke A. up, told him that someone had been in the house, and started crying. A. got up and discovered broken miniblinds and a torn window screen by the window in the computer room. T.C. and A. had left the window open all night, as they commonly did when it was hot. Several items that had been inside the duplex were found strewn throughout the backyard. A.'s wallet, which was missing cash, his driver's license, and an identification card, was in the bushes. His watch was also missing.

A. called the police, who arrived shortly thereafter. After T.C. told A. and the police that the intruder had sex with her, she was taken to the hospital where she was examined and a rape kit was prepared.

Approximately three years later, oral swabs were collected from appellant and a "DNA" profile was made. It was later determined through DNA analysis that appellant was the donor of semen recovered from T.C.'s vagina.

## DISCUSSION

### I.

*Sufficiency of the Evidence*

### A.

*Rape and Sexual Penetration by Artifice, Pretense or Concealment*

Subdivision (a)(5) of section 261 defines rape as an act of sexual intercourse with a person other than the perpetrator's spouse "[w]here a person submits under the belief that the person committing the act is the victim's spouse, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the belief." Section 289, subdivision (f) proscribes acts of sexual penetration committed when the victim submits under the same belief, and includes the same intent element.

Appellant concedes the evidence is sufficient to prove he engaged in acts of sexual intercourse and penetration with T.C., and that she submitted to those acts under the belief that he was her husband. He claims, however, that his convictions for rape and sexual penetration must be reversed because the evidence is insufficient to establish that (1) he induced T.C. to believe he was her husband through artifice, pretense, or concealment, and (2) he specifically intended to induce that belief.

In reviewing claims of insufficient evidence, " ' " ' . . . we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]' " [Citation.] ". . . [W]e presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence." [Citation.]' " (*People v. Wilson* (2008) 44 Cal.4th 758, 806 [80 Cal.Rptr.3d 211, 187 P.3d 1041].) Where the jury convicts on circumstantial evidence, our opinion that the evidence was reasonably susceptible of a contrary finding does not lead to reversal of the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054 [99 Cal.Rptr.2d 1, 5 P.3d 68].) Reversal is warranted only where it appears " 'that upon no hypothesis what[so]ever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

California is one of only a handful of states with current laws defining rape to include acts of sexual intercourse in which the victim's apparent consent is induced by the belief that the person performing the act is her spouse.[3] Although this has been the law of our state since section 261 was first enacted in 1872, the only published case examining the statute is *People v. McCoy* (1922) 58 Cal.App. 534 [208 P. 1016], which involved a defendant who obtained consent to intercourse by means of a feigned marriage. Similarly devoid of useful precedent are the current laws in other states that proscribe sexual acts committed by fraud, artifice or concealment, and subdivision (f) of section 289, which proscribes sexual penetration committed by the same means. We did, however, find two out of state cases decided under repealed statutes criminalizing such conduct that are particularly instructive here.

In *State v. Williams* (1901) 128 N.C. 573 [37 S.E. 952, 953], the North Carolina Supreme Court found sufficient evidence to sustain a conviction under a former statute prohibiting "carnal knowledge of a married woman by fraud in personating her husband." The relevant facts were stated as follows: "The wife was visiting her mother, who was ill. The defendant was there that evening, and saw her. She was expecting her husband that night. During the night the defendant entered the room where prosecutrix was sleeping on a pallet, lay down, and squeezed her hand, and pulled her towards him. She asked, 'Who is that?' Not distinguishing any answer, she said in a whisper, 'When did you come?' supposing he was her husband. The defendant replied in a whisper, 'A little while ago,' so low that she did not suspect that it was not her husband's voice. He continued to pull her hand, and she got over nearer to him, so that he accomplished his purpose." (37 S.E. at p. 953.) In concluding that this evidence was sufficient to sustain the defendant's conviction, the court reasoned, among other things, that "[h]e knew he was not the woman's husband. He knew she thought he was. He so acted as to keep up the delusion until he accomplished his purpose. It is not essential whether he went to the room for that purpose or not, nor whether he originally created the delusion or not. Even if he lay down on the pallet by mistake, and, finding a woman there, intended, by squeezing and pulling her hand, to solicit her consent to illicit intercourse . . . , he knew that he was obtaining his end by fraud in personating her husband. 'The voice was the voice of Jacob, but

---

[3] (See, e.g., Colorado (Colo. Rev. Stat. § 18-3-402(1)(c)); Idaho (Idaho Code Ann. § 18-6101(6)); and Utah (Utah Code Ann. § 76-5-406(7) (1953).) At least one state (Tennessee) treats sexual penetration "accomplished by fraud" as rape without regard to whether the victim believes the act is being committed by her husband. (See Tenn. Code Ann. § 39-13-503(a)(4).) At least two states (Alabama and Michigan) define sexual intercourse in which consent was obtained by any fraud or artifice as a crime, albeit a lesser offense than rape. (See, e.g., Ala. Code § 13A-6-65(b) (1975) [defining the offense as sexual misconduct, a misdemeanor]; Mich. Comp. Laws § 750.520b, subd. (f)(v) [defining sexual penetration of another "through concealment" as criminal sexual conduct].)

the hand was the hand of Esau,' is the story of an ever memorable fraud; but here neither hand nor voice created a suspicion in the mind of the betrayed." (*Ibid.*)

The Arizona Supreme Court was presented with a similar statute and factual scenario in *State v. Navarro* (1961) 90 Ariz. 185 [367 P.2d 227].[4] The victim in that case went to sleep in the bedroom she shared with her husband while he and four other men, including the defendant, drank beer and watched television in another room. The court recounted the facts of the crime as follows: "The next thing [the victim] remembered was waking from a sound sleep (sometime between 2:00 and 3:30 a. m.) with defendant on top of her attempting to have sexual intercourse with her. Believing defendant to be her husband she submitted to him. In a matter of seconds, however, she became aware that he was not her husband [fn. omitted] and cried out asking who he was. He covered her mouth with his hand and told her who he was and not to scream. When she cried and resisted further defendant bolted from the house, leaving his T-s[h]irt and leather jacket behind." (367 P.2d at p. 187.) The *Navarro* court concluded, albeit in dicta, that the victim's testimony recounting the incident "was sufficient not only to establish the corpus delicti but also to convict." (*Id.* at p. 189.)

■ T.C.'s testimony is similarly sufficient to sustain the jury's finding that appellant was guilty of both rape and sexual penetration by artifice, pretense or concealment, as contemplated by subdivision (a)(5) of section 261 and section 289, subdivision (f). Artifice is defined as "[a] clever plan or idea, [especially] one intended to deceive." (Black's Law Dict. (8th ed. 2004) p. 120, col. 2.) Pretense in this context is commonly understood to connote an act of pretending (Roget's II: The New Thesaurus (3d ed. 1995) p. 763), while concealment can refer to either an "act of refraining from disclosure" or hiding to prevent discovery (Black's Law Dict., *supra*, at p. 306, col. 2). The jury could reasonably infer that appellant employed these deceptive methods when he quietly entered T.C.'s dark bedroom in the middle of the night, began masturbating her as she was sleeping next to her husband, and proceeded to engage in sexual intercourse with her. Moreover, the jury could conclude that a woman in T.C.'s position would reasonably believe these acts were being committed by her husband. The jury could also infer that appellant intended for T.C. to believe that he was the man sleeping next to her in bed, and that he would have had reason to believe that man was her husband. Appellant's claim that it would also have been reasonable for him to

---

[4] The former Arizona statute (Ariz. Rev. Stat. Ann. § 13-611, subd. (6)) under which Navarro was convicted, defined rape to include the situation " '[w]here the female submits under a belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense or concealment practiced by the accused with intent to induce such belief.' [Fn. omitted.]" (*State v. Navarro, supra*, 367 P.2d at p. 186.)

believe A. was merely T.C.'s boyfriend ignores the applicable standard of review. Appellant also notes that he never actually said anything to T.C. Under the circumstances, however, his silence spoke volumes. (See *Crayton v. Superior Court* (1985) 165 Cal.App.3d 443, 451 [211 Cal.Rptr. 605] [applying in criminal context "[t]he general rule . . . that misrepresentation by passive concealment (as opposed to affirmative concealment) violates a duty to disclose . . . where 'the defendant has special knowledge, or means of knowledge, not open to the plaintiff, and is aware that the plaintiff is acting under a misapprehension as to facts which would be of importance to him, and would probably affect his decision.' (Prosser on Torts (4th ed. 1971), Representation and Nondisclosure, § 106, p. 697.)"].)

Viewed in the light most favorable to the judgment, the evidence supports the finding that appellant intended to and did induce T.C. to believe he was her husband, and for that reason she submitted to his sexual advances. Appellant's attack on the sufficiency of the evidence supporting his convictions for rape and sexual penetration fails.

## B.

### *Assault with Intent to Commit Rape*

Appellant also challenges the sufficiency of the evidence supporting his conviction for assault with intent to commit rape under section 220, subdivision (a).[5] To the extent the claim is based solely on the evidence supporting his convictions for rape and sexual penetration, it fails for the reasons we have already stated. Appellant also asserts, however, that the evidence is insufficient to sustain his assault conviction because "there is insufficient evidence as a matter of law to suggest that appellant intended to forcibly rape T.C. in the event she resisted his advances, particularly in view of the fact that such an encounter would likely have awakened the man laying beside her." There is no merit in this assertion.

 " ' "The essential element of [assault with intent to commit rape] is the intent to commit the act against the will of the complainant. The offense is complete if at any moment during the assault the accused intends to use whatever force may be required." ' [Citation.] ' "[I]f there is evidence of the former intent and acts attendant to the execution of that intent, the abandonment of that intent before consummation of the act will not erase the

---

[5] Subdivision (a) of section 220 provides in pertinent part that "any person who assaults another with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of [s]ection 264.1, 288, or 289 shall be punished by imprisonment in the state prison for two, four, or six years."

felonious nature of the assault." ' [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 399–400 [133 Cal.Rptr.2d 561, 68 P.3d 1].)

■ To convict appellant of assault with intent to commit rape, the jury had to find that he willfully committed an act that by its nature would directly and probably result in the application of force against T.C.[6] The jury was also correctly instructed that any harmful or offensive touching constitutes an unlawful use of force and thus amounts to assault. (CALCRIM No. 890; see also *People v. Colantuono* (1994) 7 Cal.4th 206, 216 [26 Cal.Rptr.2d 908, 865 P.2d 704].) Such a harmful or offensive touching " ' "may consist in the taking of indecent liberties with a woman, or laying hold of and kissing her against her will." ' " (*People v. Bradbury* (1907) 151 Cal. 675, 676–677 [91 P. 497].) The touching of a victim's sexual organs without consent is plainly offensive and is sufficient to support a conviction for assault. (*People v. Bard* (1968) 70 Cal.2d 3, 6 [73 Cal.Rptr. 547, 447 P.2d 939].)

Appellant's claim that the evidence is insufficient to support the finding that he ever intended to use force against T.C. overlooks the fact that he forcibly entered the bedroom, removed her underwear and stuck his finger in her vagina while she was asleep. Each of these acts was patently offensive, and was undertaken without T.C.'s consent. This evidence is therefore sufficient to satisfy the force element of the crime of assault with intent to commit rape.

II.

*Failure to Instruct Jury on Simple Assault*

Appellant asserts the court erred in failing to instruct the jury on simple assault (§ 240)[7] as a lesser included offense to the charge of assault with intent to commit rape or another sexual offense under section 220, subdivi-

---

[6] The jury was instructed with CALCRIM No. 890, which provides in pertinent part: "To prove that the defendant is guilty of [assault with intent to commit rape and/or any sex offense in violation of . . . section 220], the People must prove that: [¶] 1. The defendant did an act that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] 4. When the defendant acted, he had the present ability to apply force to a person; [¶] AND [¶] 5. When the defendant acted, he intended to commit rape and/or any sex offense. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. [¶] The terms application of force and apply force mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough."

[7] The crime of simple assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)

sion (a). He argues that the court had a sua sponte duty to give the instruction after he waived the statute of limitations on the charge of misdemeanor assault. We disagree.

■ The trial court does not have a duty to instruct on a lesser included offense if there is no substantial evidence in support of it. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008 [108 Cal.Rptr.2d 291, 25 P.3d 519].) The court may refuse the instruction where the evidence shows that if the defendant is guilty, he is guilty of the greater offense. (*People v. Mendoza* (2000) 24 Cal.4th 130, 174 [99 Cal.Rptr.2d 485, 6 P.3d 150].) We independently review the court's ruling in this regard. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218 [17 Cal.Rptr.3d 532, 95 P.3d 811].)

When appellant requested the instruction on simple assault, the court indicated that the statute of limitations for misdemeanor assault had expired. Appellant expressed his willingness to waive the statute of limitations, but the court nevertheless declined to give the instruction. The court reasoned, among other things, that the instruction was not required because "it's either he had sex with her and the jury finds him guilty of that or they're not going to find him guilty of anything. I think it is confusing the issues."

We find the court's reasoning persuasive. In light of the evidence that appellant broke into his victim's home in the middle of the night, crept into her bedroom, and digitally penetrated her vagina as she slept, no reasonable juror could have found that he was guilty of simple assault but not guilty of assault with intent to commit either rape or another sexual offense. The court therefore did not err in failing to instruct the jury that appellant could be found guilty of simple assault under section 240. Even if the court had erred in this regard, the error would be harmless because it is not reasonably probable the jury would have found appellant guilty of only the lesser offense. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see *People v. Breverman* (1998) 19 Cal.4th 142, 165 [77 Cal.Rptr.2d 870, 960 P.2d 1094] [failure to instruct on lesser included offense in noncapital cases is subject to *Watson* standard of harmless error review].)

## III.

### *Lesser Included Offense*

Appellant contends his conviction for assault with intent to commit rape under subdivision (a) of section 220 must be reversed because the crime is a lesser included offense of both rape under section 261, subdivision (a)(5), and sexual penetration under section 289, subdivision (f). We disagree.

■ "In general, a person may be convicted of, although not punished for, more than one crime arising out of the same act or course of conduct."

(*People v. Reed* (2006) 38 Cal.4th 1224, 1226 [45 Cal.Rptr.3d 353, 137 P.3d 184], italics omitted.) "A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' [Citation.] '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' [Citation.]" (*Id.* at p. 1227.)

Our Supreme Court has "applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former. [Citation.]" (*People v. Reed, supra*, 38 Cal.4th at pp. 1227–1228.) The Court has explained that "it is logically consistent to apply the accusatory pleading test when it is logical to do so (to ensure adequate notice) but not when it is illogical to do so (when doing so merely defeats the legislative policy permitting multiple conviction). Our conclusion results in a straightforward overall rule: Courts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged* crimes." (*Id.* at p. 1231.)

Here, the issue is whether appellant may be convicted of multiple charged crimes. Accordingly, we apply the statutory elements test to determine whether the elements of the greater offenses (rape in violation of § 261, subd. (a)(5), and sexual penetration in violation of § 289, subd. (f)) include all the elements of the lesser offense (assault with intent to commit rape or any other sexual offense under § 220, subd. (a)), such that the greater offenses cannot be committed without also committing the lesser offense. (*People v. Reed, supra*, 38 Cal.4th at p. 1231.)

■ It is readily apparent that assault in violation of section 220, subdivision (a), contains an element that is not present in the crimes of rape and sexual penetration by artifice, pretense or concealment. As appellant recognizes in challenging the sufficiency of the evidence supporting his assault conviction, the essential element of that crime is the intent to use force against the victim. (See *People v. Davis* (1995) 10 Cal.4th 463, 509 [41 Cal.Rptr.2d 826, 896 P.2d 119].) By contrast, both rape under section 261, subdivision (a)(5), and sexual penetration under section 289, subdivision (f), are accomplished *without* force, in that the perpetrator induces the victim to submit to the sexual contact by pretending to be her spouse. Appellant was thus properly convicted of all three crimes.

## DISPOSITION

The judgment is affirmed.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied January 21, 2010, and appellant's petition for review by the Supreme Court was denied April 14, 2010, S179870. George, C. J., did not participate therein.