Filed 9/21/16  P. v. Islas-Contreras CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALFREDO ISLAS-CONTRERAS,<br><br>    Defendant and Appellant. | B266014<br><br>(Los Angeles County<br>Super. Ct. No. BA423689) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Nadezhda M. Habinek and Marvin Vallejo for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Shawn McGahey Webb, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Alfredo Islas-Contreras appeals the judgment following his conviction for one felony count of assault to commit a felony, rape, during the commission of a first degree burglary (Pen. Code, § 220, subd. (b)).[1]  We affirm.

## PROCEDURAL BACKGROUND

Appellant was charged with three counts:  assault to commit a felony, rape, during the commission of a first degree burglary (§ 220, subd. (b); count 1); first degree burglary with a person present (§ 459; count 2); and first degree residential robbery (§ 211; count 3).  Before trial, counts 2 and 3 were dismissed as time-barred.  A jury found appellant guilty of count 1 and separately found true a special allegation that the assault took place during a first degree burglary.  The court sentenced him to life imprisonment with the possibility of parole.  Appellant timely appealed.

## FACTUAL BACKGROUND

On May 17, 2007, victim 27-year-old Claudia A. was returning to her apartment from her adult school when she stopped to pick some items up from the market.  Carrying her grocery bags, she entered her apartment building and went up to the second floor to her apartment.  On her way, she heard footsteps behind her but did not feel alarmed because many people lived in her complex.  When she arrived at her door, she noticed appellant was standing right next to her.  She had never seen him before.  He asked for a "donation."  She agreed to make a donation, but first she needed to set her bags down inside.

She entered and heard a noise behind her.  Startled, she turned to find appellant had entered the apartment and closed the door.  She had not invited him in and became scared.  She told him to leave and threatened to call the police.  She asked him not to hurt her and told him she had three children.  She also said her husband was home, although her partner was actually at work.  Appellant laughed and said, "No, you're alone."  He cracked his knuckles and said "damn" and "fuck."  He then grabbed her.  She tried to back away, but he took her to the couch.  She was screaming and crying, but he did not

_____

[1]    All undesignated statutory citations are to the Penal Code unless otherwise noted.

stop. He unbuttoned her pants and took her breast out of her shirt. He kissed and licked her breast and nipple. He also forcefully took off her bra. As he was on top of her, she struggled to stop him from taking her pants off. She bit him, and he became angry. He repeatedly hit her in the face and forehead. She thought he was going to kill her. She continued to scream and use her arms to shield herself. He tried to cover her mouth and called her a "bitch."

He suddenly got off her, picked up her purse, and ran out of the apartment. She immediately called 911. She had scrapes and/or bruises on her forehead, forearms, and hands, and swelling on her lower lip. Police took her to the hospital, where a nurse performed a sexual assault kit exam and collected a DNA sample from her breast. Police found her purse in the stairwell leading to the roof of her apartment building and a neighbor found her wallet hidden between the wall and the emergency door on the third floor of the building. The wallet had no money in the main compartment but had $600 hidden in the lining.

Appellant was not apprehended at the time. Seven years later in 2014, analysts matched the DNA sample taken from Claudia to a DNA sample from appellant. The results were conclusive; the random match probability was one in 10 quadrillion.

Appellant testified to a different version of his encounter with Claudia. On that day he was a 15-year-old high school student. He was walking toward Echo Park when he saw Claudia with a number of grocery bags. She smiled at him, and he asked if she needed help. She said yes and told him to follow her inside the apartment building. Carrying the bags, appellant followed her to the second floor. He asked for a donation to the Children's Hospital, although he had no affiliation. Instead, he wanted a tip. She said she would donate once she put the groceries down. She walked into her apartment and set her groceries down, then invited appellant in to do the same with the bags he was holding. He did so, and she looked in her purse for money. Not finding any, she went into her bedroom to check if she had money there. When she returned, she said she had no money but could give a different kind of donation. She put her arm on his shoulder and again asked if he wanted a donation. Appellant assumed she was coming on to him,

3

but declined her offer because he did not want to disrespect his girlfriend. She again asked if he was "sure" he did not want a donation. As he attempted to leave, she pulled him back and asked again. Appellant became angry and spat on her twice—once in her face and once on the exposed portion of her chest. She was wearing a black spaghetti-strap shirt at the time. He shoved her and she fell, hitting her head on the couch. He called her a "stupid bitch," grabbed her purse, and ran out of the apartment. He discarded the purse, went through the wallet, took two dollars, and discarded the wallet. He denied Claudia's version of the encounter, including hitting her, sexually assaulting her, or entering the apartment uninvited.

On cross-examination, appellant admitted he had two felony convictions for resisting an officer by force and stalking. He admitted he lied to the cold case detective about whether he knew of South Burlington Avenue where the incident took place and whether he had ever stolen a purse before. He also originally claimed in the incident with Claudia he quickly took the wallet from her hands while out on the street and spat in her face. He told the detective he was almost always on drugs at the time of the incident, but testified that was not accurate because he did not use drugs before basketball practice, which he had on the day of the attack. He also acknowledged that his description of Claudia's black spaghetti-strap shirt did not match the photos of her shirt from the day of the incident. And he admitted using prostitutes and cheating on his girlfriend.

In rebuttal, the cold case detective testified appellant did not tell her he had helped Claudia with her groceries and had been invited into her apartment. Nor did he say Claudia had come onto him or that he had become upset and spat on her chest, calling her a "stupid bitch." And he did not say that he had taken Claudia's purse and removed two dollars from it. When the detective showed him a photograph of Claudia, he claimed not to recognize her even though he was good with faces. He also lied about the high school he attended at the time, about not knowing South Burlington Avenue, and about whether he had ever stolen a purse before. He cracked his knuckles twice during his interview with the detective.

4

## DISCUSSION

### 1. *Instructional Error*

Appellant claims the trial court erred in not giving an instruction expressly informing the jury that section 220, subdivision (a) was a lesser included offense to section 220, subdivision (b). As we explain, the jury was presented with the option of finding a violation of section 220, subdivision (a) without finding a violation of section 220, subdivision (b), even though the court, the instructions, and the verdict form did not expressly label it as a lesser included offense. Thus, any potential error was patently harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Leal* (2009) 180 Cal.App.4th 782, 792 (*Leal*) [failure to instruct on lesser included offense is harmless under *Watson* if it is not reasonably probable the error affected the outcome].)

Section 220, subdivision (a)(1) states, "Except as provided in subdivision (b), any person who assaults another with [the] intent to commit . . . rape . . . shall be punished by imprisonment in the state prison for two, four, or six years." Subdivision (b) states, "Any person who, in the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460, assaults another with intent to commit rape . . . shall be punished by imprisonment in the state prison for life with the possibility of parole." Subdivision (a)(1) of section 220 is a lesser included offense of subdivision (b), with the commission of a burglary being the additional requirement. (*People v. Dyser* (2012) 202 Cal.App.4th 1015, 1021.)

During trial, the parties and the court discussed how to instruct the jury on section 220, subdivisions (a)(1) and (b). Citing a bench note to CALCRIM No. 890 explaining there has been no judicial guidance on whether burglary is an element of section 220, subdivision (b) or an enhancement of section 220, subdivision (a)(1), the trial court believed the burglary aspect of section 220, subdivision (b) was "a sentencing issue only," albeit one the jury would have to find beyond a reasonable doubt. Defense counsel took the position burglary was an element of section 220, subdivision (b), so the court should instruct that section 220, subdivision (a)(1) is a lesser included offense. The prosecution argued the burglary aspect of section 220, subdivision (b) should be

5

presented as a sentencing allegation to avoid jury confusion. Even so, the prosecution pointed out the jury would still have to find appellant violated section 220, subdivision (a)(1) before it considered whether the burglary allegation was true.

The court agreed with the prosecution. It therefore instructed the jury on the elements of "Penal Code section 220(a)/(b)" for assault with the intent to commit rape, plus the following sentence: "If you find the defendant guilty of the charged crime, you must then decide whether the People have proved the additional allegation that the crime was committed in the commission of a first degree burglary." First degree burglary was defined in another instruction. The jury was also separately instructed on the lesser offense of simple assault. (§ 241, subd. (a).) On the verdict form, the jury found appellant guilty of violating "Penal Code section 220(a)/(b), a felony, as charged in count 1 of the Information," and found true the separate allegation that "the crime was committed during the commission of a First Degree Burglary."

Appellant contends this procedure was erroneous because the court did not expressly instruct that section 220, subdivision (a)(1) was a lesser included offense of section 220, subdivision (b), thereby misleading the jury into believing section 220, subdivision (a)(1) was not a lesser included offense. Whether or not correct, the record above makes plain that the jury was given the same *substantive* option of finding appellant violated section 220, subdivision (a)(1) without also finding he committed a burglary as required under section 220, subdivision (b). Both the instructions and the verdict form explicitly informed the jury that it had to find all the elements of an assault with intent to commit rape under section 220, subdivision (a)(1) *before* it moved on to consider whether the prosecution proved the assault was committed during the commission of a first degree burglary. Thus, if the prosecution did not meet its burden to prove a burglary occurred, the jury would have stopped at finding appellant guilty of the lesser offense under section 220, subdivision (a)(1). The jury would have performed the same analysis had the court formally presented the section 220, subdivision (a)(1) offense as a lesser included offense to section 220, subdivision (b), and nothing suggests the jury

6

was misled into thinking otherwise. Thus, appellant suffered no conceivable prejudice and reversal is not warranted.**2**

## 2.    *"Dual Use" of Intent to Rape Finding for Section 220, Subdivisions (a) and (b)*

The burglary instruction identified three possible crimes to satisfy the element for burglary that appellant entered Claudia's apartment with felonious intent—theft, robbery, and rape. The jury was further instructed it did not need to agree on which crime he intended to commit, so long as each juror concluded appellant intended to commit at least one of those crimes. In closing, the prosecutor argued appellant entered Claudia's apartment with the intent to commit theft or robbery, but when he saw Claudia alone, he "formed a different type of intent. He wanted to rape her, in addition to taking something from her."

Citing California Rules of Court, rule 4.420(d) (rule 4.420(d)) that "[a] fact that is an element of the crime upon which punishment is being imposed may not be used to impose a greater term," appellant contends these instructions improperly permitted the jury to find his intent to commit rape supported two different elements of section 220, subdivision (b)—assault with intent to commit rape; and burglary involving an entry into a residence with the intent to commit rape. Respondent contends appellant forfeited this "dual use" argument by failing to raise it below. We agree. (*People v. Murphy* (2001) 25 Cal.4th 136, 156; *People v. Erdelen* (1996) 46 Cal.App.4th 86, 90-91.) Nonetheless, we will address the merits because appellant contends his counsel was ineffective for failing to raise the issue. (*People v. Bolin* (1998) 18 Cal.4th 297, 333 [ineffective assistance of counsel requires defendant to show performance falling below objective standard of reasonableness and resulting prejudice].) Because we find no merit to this argument, his counsel was not ineffective for failing to raise it.

---

**2**    Appellant cites *Leal* to argue "[e]ntry into an inhabited dwelling with the intent to commit sexual assault, and subsequently committing that assault, is a violation of Penal Code section 220(a) not 220(b)." But *Leal* did not involve section 220, subdivision (b); the court merely found the evidence sufficient to support a conviction under section 220, subdivision (a). (*Leal, supra*, 180 Cal.App.4th at pp. 790-791.)

The "dual use" prohibition in rule 4.420(d) prevents a trial court from using "'a fact constituting an element of the offense either to aggravate or to enhance a sentence.'" (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1197.) Section 220, subdivision (b) neither aggravates nor enhances a sentence under section 220, subdivision (a)(1); like other similar provisions in the Penal Code, it provides an alternate, more serious penalty when the jury finds an additional fact true—here, that appellant committed the assault on Claudia with the intent to rape her during the commission of a burglary. (See *People v. Jones* (2009) 47 Cal.4th 566, 578 ["'Unlike an enhancement, which provides for an *additional term* of imprisonment, [a penalty provision] sets forth an alternate penalty *for the underlying felony itself*, when the jury has determined that the defendant has satisfied the conditions specified in the statute.'"]; see also *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 899 [§ 186.22, subd. (d) is alternate penalty provision when underlying crime is gang-related]; *People v. Jefferson* (1999) 21 Cal.4th 86, 101 [minimum parole period in § 186.22, subd. (b)(4) for gang-related crimes is alternate penalty, not enhancement].) Appellant cites no law that prohibited the jury from using his intent to rape Claudia both to find he committed an assault with the intent to rape and he did so during the commission of a burglary based on his entry with the intent to rape her, thereby triggering the alternate penalty provision in section 220, subdivision (b). Thus, the instructions allowing the jury to do so were not improper.

## 3.  *Sufficiency of the Evidence of Burglary*

Appellant contends insufficient evidence demonstrated he entered Claudia's apartment with the intent to commit theft or a felony as required for the burglary aspect of section 220, subdivision (b). (See § 459 [burglary is committed when a "person . . . enters any house, room, apartment . . . or other building . . . with [the] intent to commit grand or petit larceny or any felony"].) We disagree.

"On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] '"[I]f the verdict

is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."'" (*People v. Snow* (2003) 30 Cal.4th 43, 66.) This standard applies whether direct or circumstantial evidence is involved. (*Ibid.*)

Again, as noted, for burglary the jury was instructed that appellant must have entered Claudia's apartment with the intent to commit theft, robbery, or rape. There was sufficient evidence to support all of these alternatives. Appellant spotted Claudia alone, possibly distracted and vulnerable as she carried her groceries up to her second-floor apartment. He followed her to her door and asked for a donation to a charity he had no connection to. After she agreed and entered her apartment, he followed her inside uninvited. He immediately shut the door and cracked his knuckles, saying "damn" and "fuck." He then forced her onto the couch and covered her mouth with his hand as she struggled. He forcefully removed her bra and exposed her breast, licked it, and tried to remove her pants as she cried. She fought him off, and he hit her multiple times in the head. He then grabbed her purse and fled, taking the two dollars he could find in her wallet and discarding both the wallet and purse.

This evidence amply supported an inference appellant entered Claudia's apartment with the intent to steal from her, to rape her, or both. (See *People v. Abilez* (2007) 41 Cal.4th 472, 508 (*Abilez*) [sufficient evidence showed entry with intent to steal when defendant previously clashed with victim over money, had asked victim for money shortly before crime, and completed robbery after entering residence]; *People v. Padilla* (1962) 210 Cal.App.2d 541, 542-544 [sufficient evidence showed burglary with intent to commit rape when defendant entered victim's bedroom at night, sat on her bed, placed a handkerchief over her mouth, and fled when she struggled and screamed]; see also *People v. Reed* (1966) 241 Cal.App.2d 102, 105 [defendant had both intent to assault victim and to steal when he entered residence, committed assault, and stole purse].)

Appellant's contrary arguments ignore the facts supporting his convictions. He contends he could not have intended to steal from Claudia because she agreed to make a donation to him. But the evidence showed he lied about his affiliation with a charity,

9

strongly suggesting his request was a ruse to gain entry to her apartment. He also stole her purse when he left, which is itself evidence he intended to do so when he entered. (See *Abilez, supra*, 41 Cal.4th at p. 508 ["'[T]here is no better proof that [defendant] entered the [victim's house] with intent to commit robbery than a showing he did in fact commit robbery after his entry.'"].) He also contends the evidence showed he only intended to temporarily deprive Claudia of her purse and wallet because he was "mad" at her for coming on to him and the wallet was later found with $600 inside. But the jury rejected his version of events that Claudia came on to him, and the evidence showed he discarded the purse and wallet after taking the two dollars he could find; the $600 he left behind was tucked into the lining and probably not obvious at a glance. This evidence permitted the jury to conclude appellant intended to permanently deprive Claudia of her property. (See *People v. DeLeon* (1982) 138 Cal.App.3d 602, 606 ["The fact that the [stolen] car was subsequently abandoned does not compel the conclusion that appellants intended to deprive the owner of the car only temporarily. Appellants' intent was to be inferred from circumstances and was a question of fact for the jury to decide."]; *People v. Hall* (1967) 253 Cal.App.2d 1051, 1054 ["The fact that the wallet was returned, or later discovered abandoned by [the victim], does not absolve appellant of any element essential to support his conviction of robbery"].)

Finally, appellant claims his intent to rape Claudia could not support the jury's burglary finding because it was used to find assault with intent to rape under section 220, subdivision (a)(1). As explained above, we have rejected his view of section 220, subdivisions (a)(1) and (b), so we reject his related argument here.

**DISPOSITION**

The judgment is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

11