Filed 11/26/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084845 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD297077) |
| RUBEN PARAMO GALLARDO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge. Affirmed.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Robin Urbanski and Anastasia Sagorsky, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Ruben Paramo Gallardo guilty of rape of an unconscious person (Pen. Code, § 261, subd. (a)(4); count 1),[1] and assault with intent to commit rape (§ 220, subd. (a)(1); count 2). The trial court sentenced Gallardo

---

[1] All further statutory references are to the Penal Code.

to the middle term of four years for count 2 and stayed a concurrent low term of three years for count 1 in accordance with section 654.

On appeal from the judgment of conviction, Gallardo argues assault with intent to commit rape is a lesser included offense of rape of an unconscious person and, therefore, his conviction for assault with intent to commit rape must be reversed. On the record presented here, we reject this contention and hold assault with intent to commit rape of an unconscious person is not a lesser included offense of rape of an unconscious person. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Prosecution Case*

One evening in November 2022, D.L. hosted a group of friends at her apartment. A.S. was the first to arrive. The two women drank vodka and Four Loko, another alcoholic beverage, and smoked marijuana while they got ready for the evening.

Around 10:00 p.m., Gallardo and his friend, C.C., arrived at D.L.'s apartment. Gallardo and D.L. had known each other for three or four years, and she saw him as a brother. C.C. and D.L. were in a relationship. D.L. testified that once the men got to her apartment, A.S. was "getting really kind of slurry" and was "in and out of consciousness."

The group played a drinking game and hung out in the living room. C.C., Gallardo, and D.L. continued drinking alcohol and smoking marijuana. A.S. continued drinking, but did not smoke marijuana after Gallardo and C.C. arrived. At trial, A.S. estimated that she consumed about six shots of liquor, a tall can of Four Loko, and smoked two "bowls" of marijuana.

While the group continued playing games, A.S. had to be carried to the bathroom multiple times to vomit. Due to A.S.'s state of inebriation,

2

Gallardo, C.C., or D.L. had to guide A.S. to and from the bathroom. On her last trip to the bathroom, Gallardo helped A.S. there and then carried her back into the living room. He placed her on a couch in the living room.

Gallardo testified that around midnight, A.S. was "pretty faded" and had "passed out." Gallardo drew "all over [A.S.'s] face" with markers after she "passed out." In the past, this friend group would draw on the face of the first person to pass out. After A.S. passed out, another friend, I.C., stopped by D.L.'s apartment. When I.C. arrived, A.S. was asleep on the couch. D.L. testified A.S. was "blacked out" when I.C. left the apartment hours later.

Eventually, after I.C. left, D.L. and C.C. went to bed in D.L.'s room. Gallardo planned to sleep in the living room on the couch opposite A.S. He formed "kind of like a bed, a mattress" by pushing the two couches together. Gallardo then smoked more marijuana and lay down next to A.S. on the makeshift bed.

About thirty minutes after D.L. and C.C. went to the bedroom, D.L. got up to get a glass of water. As she left her room, she heard the volume on the television in the living room increase. When she entered the living room, she saw Gallardo shirtless and on top of A.S. D.L. testified she saw Gallardo thrusting into A.S., who was faced down on the couch with Gallardo's hand holding her head down, and her butt propped up. D.L. saw A.S.'s eyes were closed, her arms were laid out to the side, and A.S. was silent. D.L. testified that Gallardo was penetrating A.S.

D.L. ran to Gallardo and pushed him off A.S. The couches separated, and A.S. fell into the gap between the couches. Gallardo told D.L., "It's not what it looks like," and said he was sorry. A.S. woke up to D.L.'s screams and asked what was happening. She was naked from the waist down. A.S.

3

testified the last thing she remembered before she passed out was playing games after Gallardo and C.C. arrived.

C.C. came into the living room and began arguing with Gallardo. A physical altercation erupted between the group. After the altercation, they drove to Gallardo's house to tell his mother what happened. A.S. and D.L. called the police on the drive to Gallardo's house, and officers met the group there. The police then drove Gallardo, A.S., and D.L. to the police station. Thereafter, A.S. went to the hospital for a medical examination.

During her exam, A.S. noticed bruises that she did not have prior to that night. The nurse who examined A.S. noted bruising on both knees, arms, the side of her nose, and abrasions to her left knee, the fingers of her left hand, and two crescent shaped abrasions on the back of her upper left thigh. A.S. was also experiencing pain in her vagina and the examiner removed a tampon lodged above her cervix. The examiner took DNA swabs on various parts of A.S.'s body. Testing showed Gallardo's DNA was present on A.S.'s genitalia and breasts. A blood sample taken from A.S. the following day around noon showed her blood alcohol concentration (BAC) was .084 percent. A criminalist testified at trial that he estimated A.S.'s BAC around the time of the assault to be between 0.17 to 0.28 percent.

B. *Defense Case*

Gallardo took the stand in his own defense, and presented the testimony of his mother to support his case. Gallardo's mother testified she saw D.L. and Gallardo dancing together at a family quinceañera in September 2022. At that event, D.L. told Gallardo's mother she was his girlfriend. Gallardo then clarified to his mother that D.L. was just a friend. D.L. testified about another prior event stating Gallardo rubbed his private

4

area on her butt while sleeping next to her.  Gallardo denied rubbing against her.

With respect to the night of the crime, Gallardo testified that while the group played games in D.L.'s living room, A.S. sat on his lap, which D.L. and C.C. both witnessed.  When Gallardo assisted A.S. to the bathroom to vomit, she "grabbed on" him, and also tried to suck his thumb.  He also testified that she tried to kiss him in the bathroom, but he did not want to kiss her because she had thrown up.  According to Gallardo, A.S. grabbed his penis through his clothes at another point in the evening.

Gallardo testified that later in the evening after he lay on the couch, A.S. "scoot[ed]" towards him.  He began kissing A.S.'s back, and as she rolled toward him, Gallardo got on top of her and continued kissing her.  Gallardo helped A.S. remove her shorts and underwear, and she threw them to the floor.  He penetrated A.S. while her legs were wrapped around his waist.  Gallardo and A.S. switched positions and he testified that she was awake with her eyes open.  Shortly after, D.L. entered the room and punched him in the face.  He apologized to D.L. because he did not mean to "disrespect the pad" and he admitted he said, "It's not what it looks like," in response to D.L.'s allegation that he had taken advantage of A.S.  In his interview with detectives, Gallardo stated A.S. had been in and out of consciousness while he kissed her on the couch.

## DISCUSSION

### I

### *Legal Standards*

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct." (*People v. Reed* (2006) 38 Cal.4th 1224, 1226 (*Reed*).)  "A judicially created

5

exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' [Citation.] '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " (*Id.* at p. 1227.)

"We have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test." (*Reed, supra*, 38 Cal.4th at p. 1227.) However, " '[i]n deciding whether multiple conviction is proper, a court should consider only the statutory elements.' " (*People v. Delgado* (2017) 2 Cal.5th 544, 570.) Under this test, "if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.' [Citation.] In other words, ' "[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." ' " (*Ibid.*)

Section 261 defines rape in several circumstances. Subdivision (a)(4), rape of unconscious person, states that rape occurs "[i]f a person is at the time unconscious of the nature of the act, and this is known to the accused." (§ 261, subd. (a)(4).) The statute further provides that " 'unconscious of the nature of the act' means incapable of resisting because the victim meets any one of the following conditions: [¶] (A) Was unconscious or asleep. [¶] (B) Was not aware, knowing, perceiving, or cognizant that the act occurred. [¶] (C) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact. [¶] (D) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual

6

penetration served a professional purpose when it served no professional purpose." (§ 261, subd. (a)(4).)

Section 220, assault with intent to commit rape, states that "any person who assaults another with intent to commit ... rape ... shall be punished by imprisonment in the state prison for two, four, or six years." (§ 220, subd. (a)(1).) " ' " 'The essential element of [assault with intent to commit rape] is the intent to commit the act against the will of the complainant. The offense is complete if at any moment during the assault the accused intends to use whatever force may be required.' " ' " (*People v. Leal* (2009) 180 Cal.App.4th 782, 790 (*Leal*), quoting *People v. Maury* (2003) 30 Cal.4th 342, 399–400.)

## II

### *Analysis*

As noted, Gallardo's sole contention on appeal is that his conviction for assault with intent to commit rape under section 220, subdivision (a)(1) must be reversed because it is a lesser included offense of rape of an unconscious person under section 261, subdivision (a)(4). Because the issue is whether Gallardo can be convicted of both charged offenses, we apply the statutory elements test. Under this test, it is apparent that Gallardo's violation of section 220 includes an element that section 261, subdivision (a)(4) does not.

Specifically, section 220 requires the jury to find the defendant intended to use force against the victim. (*Leal, supra,* 180 Cal.App.4th at p. 793.) With respect to the violation of section 220, assault with intent to commit rape, the jury was instructed with CALCRIM No. 890, which stated: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant

7

did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] 4. When the defendant acted, he had the present ability to apply force to a person; [¶] AND [¶] 5. When the defendant acted, he intended to commit rape of an unconscious person."

A conviction of rape of an unconscious person in violation of Section 261, subdivision (a)(4), in contrast, does not require the jury to find the defendant intended to use force. With respect to the violation of section 261, subdivision (a)(4), the trial court instructed the jury with CALCRIM No. 1003, which stated: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant had sexual intercourse with a woman; [¶] 2. The woman was unable to resist because she was unconscious of the nature of the act; [¶] AND [¶] 3. The defendant knew that the woman was unable to resist because she was unconscious of the nature of the act." This instruction did not require the jury to find that Gallardo used force in the commission of the rape. Rather, the jury could find Gallardo guilty of the crime by finding A.S. was unable to resist solely because she was unconscious.

Gallardo contends that he could not have committed rape of an unconscious person without also knowingly and willfully committing an act likely to result in the application of force. We disagree. As stated, a violation of section 261, subdivision (a)(4) does not require the prosecution to prove the rape was committed with force. Rather, the prosecution must show only that the defendant overcame the victim's will as a result of the victim's unconscious state. Put another way, rape of an unconscious person can be committed without a finding of intent to use force because it involves a victim

8

who is "unconscious of the nature of the act" and thus "incapable of resisting" due to being "unconscious or asleep." (§ 261, subd. (a)(4)(A).) Therefore, a finding of force was not required to convict Gallardo of the rape because the jury could find it occurred while A.S. was incapable of resisting Gallardo.[2]

Because the element of intent to use force, which is required for assault with intent to commit rape, is not an element of rape of an unconscious person, section 220 is not a lesser included offense of section 261, subdivision (a)(4), and the jury properly convicted Gallardo of both offenses.

### DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

BUCHANAN, J.

---

[2] *Leal* is instructive on this point. In that case, the defendant entered the victim's home at night through a window; the victim and her husband were asleep in bed, highly intoxicated after drinking heavily at a birthday celebration. (*Leal, supra*, 180 Cal.App.4th at pp. 785–786.) The victim was awakened when she felt a finger in her vagina, and the defendant then had sex with her; the victim thought it was her husband and did not resist. (*Ibid.*) The Court of Appeal held that assault with intent to commit rape was not a lesser included offense of rape by artifice, pretense, concealment because while the intent to use force against the victim is an essential element of assault, rape by artifice is effectuated without force. (*Id.* at p. 793.) Similarly, here, intent to use force is not a required element of rape of an unconscious victim. Rather, the rape is effectuated as a result of the victim's unconscious state.

9